STUBBLEFIELD *v.* STATE.*

(Division B. April 5, 1926.)

[107 So. 663. No. 25581.]

1. CRIMINAL LAW. *Homicide. While it is unwise to give instruction shutting off right of self-defense in murder or manslaughter prosecutions, where facts embraced in hypotheses of instructions warrant application of doctrine, and facts in evidence will sustain hypotheses, such instruction may be given; where all instructions for state and accused taken together on given proposition make harmonious announcement of law, supported by facts, supreme court will not reverse.*

While it is unwise in practice to give an instruction shutting off the right of self-defense in prosecutions for murder or manslaughter, still, where the facts embraced in the hypotheses of the instructions warrant the application of the doctrine, and where the facts in evidence will sustain the hypotheses embraced in the instruction, such instruction may be given. Where all of the instructions for the state and the defendant taken together on a given proposition make a harmonious announcement of

the law, and the law announced is supported by the facts, this court will not reverse.

2. HOMICIDE. *Evidence held sufficient to constitute case of murder.*
   The evidence in this case examined and reviewed, and *held* sufficient to constitute a case of murder.

3. CRIMINAL LAW. *Where law applicable to prosecution for homicide as applied to facts is fully stated in given instructions requested by accused, refusal of other instruction, though correct in form and applicable, is not error.*
   Where the law applicable to a prosecution for homicide as applied to the facts is fully given in the instructions granted as requested by a defendant, the refusal of other instructions, although correct in form and applicable, may be refused. The court is only required to announce the law applicable to the case and is not required to repeat the announcement of legal principles in various forms of expression.

---

*Corpus Juris-Cyc References: Criminal Law, 16CJ, p. 1050, n. 84; p. 1063, n. 85. Homicide. 30 CJ, p. 310, n. 25; p. 323, n. 67; p. 336, n. 70; p. 383, n. 3, 5; Refusal to give other instructions on points already covered, see 14 R.C.L., p. 751; 3 R.C.L. Supp., p. 275; 4 R.C.L. Supp., p. 916; 5 R.C.L. Supp., p. 776.

APPEAL from circuit court of Lincoln county.
HON. E. J. SIMMONS, Judge.
Nola Stubblefield appeals. Judgment affirmed.

*H. V. Wall* and *P. Z. Jones,* for appellant.

The court, in our opinion, misconceived this case in giving instruction No. 4 for the state. In giving this instruction the trial court assumed that there was evidence in the record to the effect that the defendant armed himself with a deadly weapon, a shot gun, left home for the purpose of killing Watkins, the deceased, went to the home of the deceased and there provoked a difficulty with him for the purpose and with the felonious intent to kill him. Whereas, in truth and in fact there is no such evidence in this record; the facts show, and it is undisputed, that this child went out hunting with a shot gun and a dog and shot his gun near the home of the deceased. At the most, he shot at one of

the deceased's children, and then ran into the woods near-
ly a quarter of a mile with the deceased pursuing him
before he shot and killed him.

The state takes the position that this child, fourteen
years old, conceived the idea of murdering the deceased
and of traveling about two or three miles from his home,
shooting at the deceased's children in order to decoy
him out to kill him; and after decoying him out, turned
and ran about a quarter of a mile with one felonious in-
tent of having the deceased follow him so that he could
get to kill him. This is the contention of the state, and
we say that this theory is not borne out by the facts.
It borders on the ridiculous, because the human mind
does not work that way; and especially is that true of
a child fourteen years old.

The lower court in giving the instructions was labor-
ing under a misconception of the Stuckey case recently
decided by this court and reported in 104 So. 610. This
instruction has been universally condemned by our courts,
as will be seen by *Hunt* v. *State,* 72 Miss. 413; *Lofton* v.
*State,* 79 Miss. 723, 31 So. 420; *Pulpus* v. *State,* 82 Miss.
543, 34 So. 230; *Herring* v. *State,* 87 Miss. 628, 40 So. 230;
*Adams* v. *State,* 101 Miss. 437.

We have undertaken to analyze all of the cases where-
in a similar instruction has been given and we find in
all of them, without a single exception, as we recall it,
that the evidence shows that there was some kind of an
immediate difficulty between the defendant and the de-
ceased; that defendant went off and armed himself, came
back, provoked a difficulty and killed the deceased.

We contend that before an instruction of this kind
could be given, it was absolutely necessary that the state
first prove by competent evidence facts to sustain such a
theory. Our court has universally held this to be the
rule.

There is no evidence in this record to show the es-
sential elements necessary to such an instruction; there
is no evidence that the defendant armed himself with a
shot gun for the purpose of killing the deceased. This in-

struction assumes such was proved. There is no evidence to show that the boy was the aggressor in the difficulty in which Watkins was killed.

This instruction depriving the defendant of the right of self-defense has been condemned by our court and the doctrine seems to be well settled that this instruction should never be given except in rare cases. We do not perceive any conflict in the authorities. The question has been before our court many times and we refer this court to the following cases: *Smith* v. *State,* 75 Miss. 553, 23 So. 260; *Patterson* v. *State,* 75 Miss. 675, 23 So. 467; *Fore* v. *State,* 75 Miss. 727, 23 So. 710; *Lofton* v. *State,* 79 Miss. 723, 31 So. 420; *Cooper* v. *State,* 80 Miss. 175, 31 So. 579; *Pulpus* v. *State,* 82 Miss. 543, 35 So. 2; *Jones* v. *State,* 84 Miss. 194, 33 So. 243; *Herring* v. *State,* 87 Miss. 628, 40 So. 230; *Garner* v. *State,* 93 Miss. 843, 47 So. 500; *Williamson* v. *State,* 115 Miss. 716, 76 So. 637; *Adams* v. *State* (Miss.), 101 So. 437; *Cannon* v. *State,* 57 Miss. 147; *Thomas* v. *State,* 61 Miss. 60; *Helm* v. *State,* 67 Miss. 562, 7 So. 487; *Thompson* v. *State* (Miss.), 9 So. 298; *Hunt* v. *State,* 72 Miss. 413, 16 So. 753; *Prine* v. *State,* 73 Miss. 838, 19 So. 711; *Smith* v. *State,* 75 Miss. 553, 23 So. 260; *Hays* v. *State,* 130 Miss. 381, 94 So. 212.

The court has held that this instruction should be granted only in cases where the facts justify it. And a reading of this record will disclose an utter lack of evidence upon which to base this instruction here.

*J. H. Sumrall* and *J. A. Lauderdale,* Assistant Attorney-General, for the state.

Even though all the instructions requested are correct as propositions of law and applicable to the facts in this case, this cause should not be reversed simply because all were not given. The twenty instructions granted are certainly ample to cover this case and those granted did cover every phase of the law, the evidence and the rights of the defendant. See *Ingram* v. *State,* 62 Miss.

142; *Mabry* v. *State,* 71 Miss. 716; *Waldrop* v. *State,* 54 So. 66; *Schrader* v. *State,* 84 Miss. 593; *McCoy* v. *State,* 91 Miss. 257; *Lewis* v. *State,* 93 Miss. 697; *Brett* v. *State,* 94 Miss. 669; *Anglin* v. *State,* 96 Miss. 215.

Appellant assigns as error instruction No. 4, granted to the state. This instruction is sound law, admittedly so by counsel for appellant, and it is supported by the authorities cited by them. However, they claim that it is erroneous because the facts in this case do not justify it. The defendant had made various and sundry threats that he would kill deceased. He armed himself with a shot gun, a deadly weapon. He provoked the difficulty by shooting at deceased's son. He used the shot gun to kill Watkins. He boasted afterwards that he had made threats and had carried them out. The law presumes he intended to do what he did do. The facts show that this instruction was clearly justifiable and it was not error to give it in this case. Even though this court should hold that it was error, it will not work a reversal of this case because the defendant requested and obtained two instructions, Nos. 6 and 20, that announced exactly the same proposition of law and he cannot now complain that the court announced for the state that the law is as stated in the instructions for the defendant.

Argued orally by *P. Z. Jones* and *H. V. Wall,* for appellant, and *J. A. Lauderdale,* Assistant Attorney-General, for the state.

ETHRIDGE, J., delivered the opinion of the court.

The appellent, a boy fifteen years of age, was indicted for the murder of A. K. Watkins, a school teacher in Lincoln county, Miss. The facts in reference to the killing are substantially as follows: In February preceding the killing appellant was a pupil in the school taught by Professor Watkins and was punished corporally by Mr. Watkins for some infraction of the regulations of the

school, and at the time of the infliction of the punishment made some threat against Mr. Watkins. Appellant repeated these threats or made other threats at different times between the date of the punishment and the date of the killing, which killing occurred some two or three weeks after the school term closed. On the day of the killing appellant, being near the Watkins' house, fired a gun, the shot from which came in the direction of the home and attracted the attention of the Watkins' family and of a young lady who was there on that day engaged in canning some products. When the first shot was fired, Mr. Watkins looked around the place a little and went to the home of a neighbor just across the road and asked him if he heard the shot and if he knew where it came from. The neighbor replied that he heard the shot, but did not know who fired it, nor where it came from. Mr. Watkins then asked this man to go with him into the woods near their homes and investigate the matter, but the neighbor declined to do this. Watkins returned to his home and was in his back yard when another shot was fired from a pine stump; the shot going in the direction of a child of Mr. Watkins. Mrs. Watkins and the young lady who was engaged in canning that morning in the Watkins' home both saw and identified the appellant as the party who fired the shot, and the child testified that the shot struck the Watkins' house. There was other evidence tending to show that the shot struck the Watkins' house. Mr. Watkins at the time this second shot was fired was on the opposite side of a building on his place and started around the building in the direction of the shot when the appellant ran into the woods pursued by Mr. Watkins. In a few minutes a third shot was heard. The neighbors were notified, and search was made in the woods from whence the shot was heard, and the body of Mr. Watkins was found about an eighth of a mile from his residence, with a shot through the front of his body in the breast, passing through the lungs. He was lying on his face with his left hand under his head or face and his right hand ex-

tended a short distance from his head. The parties who found the body testified that they found Mr. Watkins' body in an open place in the woods, clear of sticks or debris, and that there was nothing near the body in the form of a stick; that there were no weapons upon the body of Mr. Watkins. Some little distance from the body was a burnt stump, and behind the stump were found tracks, and there were tracks found going from this stump to the body of Watkins. Near the feet of the deceased was found an empty gun shell, and also wadding from a shell was found near the body. This shell showed the shot to have been a No. 4 shot.

Some effort was made to trace the tracks from the body of Mr. Watkins and these tracks were found some distance in the direction of the appellant's home, but were lost before reaching there. Some of the parties searching saw the appellant at work on his father's farm, and asked him if he had seen any one passing in that direction, and the appellant replied that he had not seen any one. They asked him if he knew that Mr. Watkins had been killed, and he replied that he did not. He was then asked if he had been around the Watkins' home or over in that direction, and he denied having been over there. Afterwards a Mr. Gant with his bloodhounds was sent for and carried to the place of the killing, and these bloodhounds trailed these tracks from Mr. Watkins' body to where the boy was, whereupon this appellant was placed under arrest and carried to the Watkins' home. The deputy sheriff asked the appellant if he killed Mr. Watkins, and the appellant denied killing Mr. Watkins. Afterwards at the Watkins' place where a crowd of people were assembled appellant seemed to become frightened, and stated to those having him in custody that, if they would take him away, he would tell them all about it, and he made a statement telling them how he killed Mr. Watkins. This statement was objected to by the defendant, and the court excluded it from the evidence.

The state then introduced a number of statements made subsequent to the killing of Mr. Watkins by the appellant while in the jail, in which statements the appellant admitted that he killed Mr. Watkins, stating that he had intended to kill him all along and that, if it was to be done again, he would do it all over again.

The defendant testified in his own behalf and admitted the killing of Mr. Watkins, but claimed that he had acted in self-defense. His statement was that, on the morning of the killing, he started plowing on his father's farm, and that he had trouble with the mule he was plowing and took the mule out and went back to his home and helped his mother get off to some place she was going on business that day. He stated that his father was absent from home, at work in Louisiana, and that, after his mother left that day, there was no one at his home, and so he decided to take his gun and go down to a stream nearby, between his home and the Watkins' home, and shoot some trout which he had seen shortly before. He testified that he did not find any trout in the stream and decided to go on hunting. That he had a dog with him. That he did not know how far he went before he found a rabbit and shot at the rabbit. He did not know how far he then was from the Watkins' home and did not know whether he killed the rabbit or not. That he walked on a little further and shot at a partridge, but did not know whether he hit the partridge or not. That he did not know how far he was from the Watkins' home by that time, but that shortly after shooting at the partridge he saw Professor Watkins running in his direction, and he ran from him, and Mr. Watkins pursued him and was about to overtake him, and appellant called out to Mr. Watkins to stop, "Let's drop the matter," but Mr. Watkins said, "No; I am going to kill you." That he continued to run and Mr. Watkins was gaining on him. That Mr. Watkins had a stick in his hand, and that appellant again turned and called to Mr. Watkins to stop, but Mr. Watkins again said, "No; I am going to kill

you,'' and was about to get hold of his gun when the appellant shut his eyes and fired his gun, and that he threw the shell out of his gun and continued to run, and that at the time he did not know whether his shot had struck Mr. Watkins or not.  Appellant denied secreting himself behind the stump near the Watkins' home and shooting at the Watkins' child, and also denied that he had been behind the pine stump near where Mr. Watkins' body was found, and denied also the statements testified to by the state's witnesses making threats against Mr. Watkins, except those statements making threats against Mr. Watkins at the time immediately after the punishment inflicted on him by Mr. Watkins, and in regard to these statements he said he was so mad he did not know what he was saying at the time.  He denied the statements testified to by the state's witnesses which he made while in the jail, in which he admitted killing Mr. Watkins, stating he would do it all over again; in other words, he denied all the confessions testified to by the state's witnesses.

The state procured five instructions and the defendant procured twenty instructions.  The first four instructions for the state are complained of by the appellant, but the first three instructions for the state are so clearly right and free from error that we deem it not necessary to set them out or discuss them.

The fourth instruction for the state reads as follows:

''The court instructs the jury for the state that, if they believe from all the evidence in this case beyond every reasonable doubt that in the difficulty in which A. K. Watkins lost his life the defendant, Nola Stubblefield, was the aggressor and provoker of the difficulty, and that he prepared himself for it by arming himself with a deadly weapon, to-wit, a shotgun, and was armed at the time he entered into the difficulty, and that he sought out the deceased and brought on and provoked the difficulty, intending to use his shotgun and overcome his adversary, if necessary, and that, in pursuance of such former de-

sign and felonious intent, he, then and there, killed the deceased, A. K. Watkins, then he is guilty of murder, and he cannot, according to the laws of the state, be heard to say that he acted in self-defense, even though he killed the said A. K. Watkins in self-defense, unless you further believe that the defendant in good faith had abandoned the difficulty and was in good faith fleeing at the time of the killing.''

This instruction is strongly criticised and urged as a cause of reversal in this case. Indeed it is the principal ground relied on for a reversal.

It was the theory of the state that the appellant. went to the home of the deceased for the purpose of killing him and that he fired the shots near the home of the deceased for the purpose of attracting the deceased away from home, and for the purpose of killing him in pursuance of his previous threats.

The defendant procured elaborate instructions announcing the right of self-defense and the right to resort to self-defense, even if the jury believed he went to the home of the deceased and fired the shots as there testified to by the state's witnesses.

The sixth instruction given for the defendant reads as follows:

''The court instructs the jury for the defendant that, even though you may believe that he threatened to kill the deceased, and even though you may believe that he intended to carry out the threat, and even though you may believe that he left his home and went to the home of the deceased for the purpose of killing him, and even though you may believe that he shot at the deceased's children, yet the defendant is not guilty, if, after the said shooting, he abandoned his purpose and left the scene, and when he saw the deceased coming in his direction he started running from the scene and was running from the deceased and the deceased was pursuing him, and the defendant had run one-half of a quarter of a mile from the scene, with the deceased after him, and when the

defendant saw that the deceased was about to catch him he stopped, and the deceased advanced upon him with a stick, in a threatening manner, and the defendant reasonably believed that the deceased was about to do him great bodily harm, he had a right to shoot, and if he did shoot and kill the deceased, under these circumstances, your verdict will be not guilty.''

The ninth instruction given for the defendant reads as follows:

''The court instructs the jury that the right of self-defense is a part of the law of the land and you have no right, under your oath, to ignore it, and, although you may believe that the defendant was the aggressor in the difficulty which resulted in the killing of the deceased, yet if you further believe that the defendant had abandoned the difficulty in good faith and was then fleeing from the scene and the deceased was pursuing him and did pursue him for about one-half of a quarter of a mile, and the defendant was running from the deceased, and in good faith attempting to escape, and the deceased was pursuing the defendant, with a stick, in an angry and threatening manner, and that the defendant reasonably believed the deceased was going to do him great bodily harm, and from all of the facts and circumstances it reasonably appeared to the defendant that he was in danger of great bodily harm at the hands of the deceased, then he had a right to shoot and kill the deceased, and your verdict should be not guilty.''

The twentieth instruction for the defendant reads as follows:

''The court instructs the jury for the defendant that, even though you may believe that he threatened to kill the deceased, and even though you may believe that he intended to carry out the threat, and even though you may believe that he left his home, and went to the home of deceased for the purpose of killing him, and even though you may believe that he shot at the deceased, and even though you believe that he shot at deceased's chil-

dren at or near deceased's home, yet the defendant is not guilty, if, after the said shooting, he abandoned his purpose in good faith, and left the scene of said shooting, and the deceased pursued him for about one-half of one-quarter of a mile into the woods, and, when the defendant saw that the deceased was about to catch him, he stopped and asked the deceased to stop, but instead of stopping, he advanced on the defendant with a stick in his hand in a threatening manner, stating at the time that he was going to kill him, and defendant reasonably believed that deceased was about to kill him, or do him great bodily harm, he had a right to shoot, and, if he did shoot and kill the deceased under these circumstances, your verdict will be not guilty.''

Taking all of these instructions together and applying them to the facts in the case, we do not think it is reversible error for the state to procure its fourth instruction. The circumstances shown in evidence are such as to warrant the jury in believing that deceased was wholly unarmed and that he was not attempting any felonious assault upon the appellant or any assault at all; in other words, the appellant's version of the transaction is contradicted by the circumstances in evidence and in many particulars is overwhelmed by positive human testimony.

It was not improbable that the appellant did what he did at and near the home of Watkins for the purpose of attracting Watkins away from home where he could kill him without witnesses being present, and thus be able to set up his own version of it in his defense of the killing.

Appellant requested a peremptory instruction which was refused and rightfully so.

Appellant proceeds upon the idea that his own testimony is not disputed; that Mr. Watkins was pursuing him with a stick and made the threats testified to, but we think the evidence sufficient to overcome the appellant's testimony.

Appellant requested a number of instructions, many of which were not correct as propositions of law, but some

of which were correct as propositions of law, but we think the instructions given appellant cover fully every feature of the case and that appellant had the benefit of every principle of law to which he was entitled in the case.

The judgment of the court will therefore be affirmed.

*Affirmed.*