GRADY *v.* STATE.*

(Division B. Nov. 8, 1926. Suggestion of Error Overruled Nov. 22, 1926.)

[110 So. 225. No. 25783.]

1. HOMICIDE.

Defendant's evidence as to homicide witnessed by no other person would be controlling, in absence of other facts and circumstances showing guilt, and there would be no question for jury.

2. HOMICIDE.
Where defendant claiming self-defense was only witness to homi-
cide, jury is not confined to his evidence as to manner in which
homicide occurred, but may consider all facts and circumstances
bearing thereon.

3. HOMICIDE.
Evidence consisting alone of defendant's statement and surround-
ing facts *held* to sustain verdict of murder as against contention
that killing was in self-defense, and refusal to direct verdict
for defendant was proper.

4. CRIMINAL LAW.
Instruction in murder prosecution, authorizing verdict of guilty
as charged, *held* permissive and not mandatory and did not pre-
clude request for manslaughter instruction.

5. CRIMINAL LAW.
In view of Hemingway's Code, section 577, party to a cause cannot
complain of court's failure to give instruction which was not re-
quested.

6. CRIMINAL LAW.
In order to warrant complaint of trial court's action on appeal,
action must have been prejudicial and have arisen from denial of
his request or granting request of adversary.

7. CRIMINAL LAW.
Appellant cannot put trial court in error for refusal of instruc-
tion unless he has requested giving of such instruction.

8. CRIMINAL LAW.
Defendant in murder prosecution cannot complain on appeal of
trial court's refusal to give manslaughter instruction requested
by state and not by defendant.

---

*Corpus Juris-Cyc. References: Criminal Law, 16 C. J., p. 1047, n.
65; 17 C. J., p. 51, n. 61; p. 64, n. 3; p. 208, n. 76; p. 272, n. 2; Homicide,
30 C. J., p. 308, n. 9, 19; p. 324, n. 69; p. 329, n. 20.

APPEAL from circuit court of Panola county.
HON. GREEK L. RICE, Judge.
W. H. Grady was convicted of murder, and he appeals.
Affirmed.

*J. F. Dean* and *J. W. Kyle,* for appellant.

I.   The evidence fails to show the guilt of appellant beyond a reasonable doubt.   It actually and positively shows that defendant acted solely in his self-defense. Every fact and circumstance connected with the case as shown by this record corroborates appellant in his testimony as to what occurred in the engine room when McCoy was killed.

II.   Under the instruction of the court, the jury was shut up to a verdict of murder or nothing.   The court gave the instruction on murder saying if they found the defendant guilty they *might* return one of the following verdicts, etc.   Then the court refused to give an instruction at the request of the state permitting a verdict of manslaugher, so that, necessarily, the verdict had to be murder or not guilty.

If the jury was warranted in returning a verdict of manslaughter, then this case should be reversed.   *Johnson* v. *State,* 75 Miss. 635; *Allen* v. *State,* 139 Miss. 605; *Tatum* v. *State,* 107 So. 418.

In neither the Johnson nor Allen cases was an instruction on manslaughter asked by either side, but the court in each of these cases excluded manslaughter from the consideration of the jury and each case was for that reason reversed.

In this case the murder instruction used the word "may," but it is unlike the Tatum case in that an instruction on manslaughter was requested and refused.   That the defendant did not request the instruction cuts no figure.   This court has repeatedly held that all of the instructions must be considered as a whole and held distinctly in the Tatum case that the defendant could take advantage of any error in the state's instruction wihout requesting an instruction to cure the error.

The error of the court in refusing the manslaughter instruction was accentuated by the granting of the second and third instruction for the state.

*J. A. Lauderdale.* Assistant Attorney-General, for the state.

I.   Appellant contends that instruction No. 1 is erroneous in that it requires the jury to find the defendant guilty of murder or acquit him; that it excludes the jury from considering and returning a verdict of manslaughter.   This court has held otherwise and approved this instruction in a case where it held that a manslaughter instruction would have been proper if requested. *Tatum* v. *State,* 107 So. 418.

II.   Appellant contends that instruction No. 2 for the state is erroneous in that it prevents the jury from considering the insulting language for the purpose of reducing the grade of the crime from murder to manslaughter. Mere words or gestures, however insulting or abusive they may be, are not adequate to reduce the grade of homicide from murder to manslaughter.   *Richardson* v. *State,* 123 Miss. 232; *Preston* v. *State,* 25 Miss. 383; 13 R. C. L., page 795, paragraph 99; 26 C. J., page 1134, paragraph 119.

III.   The state requested an instruction defining manslaughter and authorizing the jury to find the defendant guilty of manslaughter.   The instruction was refused and the appellant assigns this action of the court as error.   The state did not obtain an erroneous instruction and the defendant did not request an instruction defining manslaughter.

The theory of the state on the trial of this cause was that the crime was murder; that of the defendant that the homicide was justifiable by reason of self-defense. It was not error for the court to refuse said instruction defining manslaughter.   *Hannan* v. *State,* 87 Miss. 375; *Dye* v. *State,* 127 Miss. 492.   Appellant did not request a manslaughter instruction.   He cannot complain that none was given.   *Tatum* v. *State,* 107 So. 417.

IV.   The peremptory instruction requested by the defendant was properly refused.   The testimony is contradicted by the physical facts in the case.

The defendant was properly convicted of murder and the judgment should be affirmed. ·

Argued orally by *John W. Kyle,* for appellant, and *J. A. Lauderdale,* Assistant Attorney-General, for the state.

ANDERSON, J., delivered the opinion of the court.

Appellant, W. H. Grady, was indicted and convicted in the circuit court of Panola county of the murder of W. G. McCoy and sentenced to the penitentiary for life. From that judgment he prosecutes this appeal.

Appellant and the deceased both worked for the Carrier Lumber Company in its box factory at Sardis, Miss. Appellant was foreman of the box factory, and the deceased was engineer.   They both lived at a hotel near the box factory and disliked each other to such an extent that they had not spoken for several months.   It was a part of appellant's duties to go to the boiler room to look after the fire.   It was also his duty to see that steam was turned on in the box factory.   The engine room and boiler room were separate.   They were in the same building, but something like fifteen to twenty yards apart, with an open space between them.   The box factory was on the second floor of the building and could be reached either through the boiler room, through an open court, or by means of a ladder leading directly into the box factory.   It was very cold.   Appellant, as was his duty, went early to the box factory to see if the pipes were frozen.   He found insufficient steam, and went to the boiler room to see if sufficient fuel was being used. While in the boiler room the deceased came in, and, without provocation, assaulted and gave appellant a beating and had to be pulled off of him.   Deceased was a strong, powerful man physically, and appellant delicate and

weak. Appellant immediately left the boiler room and
went to his room at the hotel where he lived; and got his
pistol and immediately returned to the box factory, first
entering the boiler room, and then going from there
to the engine room where he found deceased. There an
altercation took place between appellant and deceased,
during which appellant shot the deceased to death with
his pistol. There was no other person present at the
scene of the homicide other than appellant and deceased.
Therefore, what occurred there between appellant
and deceased which resulted in the death of the latter
rests alone on the testimony of appellant and the sur-
rounding facts and circumstances. Appellant undertook
to show by his evidence that he killed the deceased in
self-defense. He testified that although he had not been
in the engine room where the deceased was foreman for
a good while, he went there on a peaceable mission, which
was to request the deceased to turn the steam on in the
box factory; that the deceased was standing at a work
bench to the right of the door entering the engine room,
which was a short distance above the floor of the engine
room, with his right side, to appellant; that when appel-
lant made the request that the deceased turn on the
steam in the box factory, the deceased applied to him
vile epithets, and seized an all steel monkey wrench ly-
ing on the work bench, and with this raised in his hand
turned toward appellant, when appellant drew his pistol
and fired; that the first shot struck the deceased in his
uplifted arm in the hand of which he held the monkey
wrench; that appellant then emptied his pistol shooting
as rapidly as he could while deceased was advancing on
him; that appellant then left the box factory and went
to the hotel where he lived and called for the sheriff and
told him of the shooting. The monkey wrench was found
near the body of the deceased.

The deceased had threatened appellant, stating that if
he "did not stay out of the boiler room blocking his path,
he was going to knock his block off," while appellant

had threatened that if the deceased ever whipped him "he would not get away with it." Appellant and the deceased had not spoken to each other for six months. During that period appellant had not been in the engine room where deceased's duties were; the deceased had ordered the appellant to stay out of the engine room, and he had not been back until the time of the homicide. The deceased lived only a few minutes after being shot. There was a pool of blood on the work bench where deceased was standing at the time he was shot, and a stream of blood from the bench to the door where his body was found, the door being about eighteen feet from the bench.    The evidence tended to show that bullet marks were found on the wall near the work bench and on the floor where the deceased was found.

Appellant argues with much ability and force that the court erred in not directing a verdict of not guilty as requested by him. Appellant's position is that his own evidence, which constitutes all the testimony as to what took place at the time of the homicide, shows, without conflict, that he killed the deceased in self-defense, and therefore there was no question for the jury.

It is true that what took place at the scene of the homicide was known to no person except the appellant and the deceased, and if there were no other facts and circumstances in the case bearing on appellant's guilt, his evidence would be controlling and there would be no question for the jury, and the case would be one therefore for a directed verdict of not guilty. But that is not the case here. In their consideration, the jury were not confined to appellant's evidence as to the manner in which the homicide took place. They had the right to consider, along with appellant's testimony, the facts and circumstances taking place previous to the homicide—the fact that appellant and the deceased were enemies; and they had not spoken for six months; and, for that period, appellant had not been in the engine room where the deceased performed his duties; that only a

few minutes before the homicide, the deceased, without any provocation whatever, had assaulted and beat the appellant; that the deceased was a strong and powerful man physically, while appellant was delicate and weak; that immediately after being so assaulted and beaten, the appellant went to his room and got his pistol and proceeded at once to the engine room, where he found the deceased—and, along with these facts and circumstances, the evidence of the witnesses who first viewed the body of the deceased after the shooting, as to the physical facts bearing on the manner in which the homicide occurred.

Taking all these facts and circumstances into consideration, we are of the opinion that the jury were authorized in finding that the appellant, angered by the assault and battery committed against him by the deceased, procured his pistol and went to the engine room with the intention of assaulting the deceased, and, if necessary to overcome him in the difficulty, to kill him with the pistol procured for that purpose, and that such design and purpose on the part of the appellant were premeditated and deliberate; and, if the jury so found the facts to be, as they doubtless did, then appellant forfeited his right of self-defense, and the verdict of guilty of murder was justified under the law. In other words, the jury were justified in disbelieving appellant's testimony wherein it differed from the other facts and circumstances proven. We do not think this is a case where the court should have directed a verdict of not guilty.

The court gave the following instruction:

"The court instructs the jury for the state that murder is the killing of a human being by another without authority of law by any means or in any manner when done with the deliberate design to effect the death of the person killed. If you find the defendant guilty of murder you may return either of the following verdicts: (1) 'We, the jury, find the defendant guilty as charged in the indictment.' If this verdict is returned, it will

144 Miss.—50.

be the duty of the court to sentence the defendant to be hanged until he is dead. (2) 'We, the jury, find the defendant guilty as charged and recommend that he be sentenced to the penitentiary for the term of his natural life.' If this verdict is returned, it will be the duty of the court to sentence the defendant to the penitentiary for the term of his natural life. But if the jury find the defendant guilty as charged in the indictment, and cannot agree as to the punishment, they should not, for this reason, disagree or hang, but should return the following verdict: 'We, the jury, find the defendant guilty as charged, but disagree as to the punishment.' If this verdict is returned, it will be the duty of the court to sentence the defendant to the penitentiary for the term of his natural life.''

The state requested of the court a manslaughter instruction, which was denied. No manslaughter instruction was requested by appellant. ·Appellant contends that the result was that, although this is a case in which the jury would have been justified in returning a verdict of manslaughter instead of a verdict of murder, they were, by these two instructions, cut off from the consideration of a manslaughter verdict. It was held in *Tatum* v. *State* 142 Miss. 110, 107 So. 418, where substantially the same instruction was involved as the one here under consideration, that it did not have the effect of shutting the jury off from a consideration of whether the defendant was guilty of manslaughter; that the word "may" in the phrase in the instruction "may return either of the following verdicts" was permissive and not mandatory, and therefore it was open to the defendant in that case to ask for and obtain a manslaughter instruction, which he had failed to do.

Appellant argues that he is entitled to rely on the failure of the court to grant the manslaughter instruction requested by the state; that the court having refused to grant such an instruction for the state, it would have been vain for appellant to have requested the same in-

struction; that this court has held that all instructions
in a case are to be read· together as one instruction, and
appellant contends, therefore, that any error committed
by the court in granting or refusing instructions can be
availed of by either party prejudiced thereby.    This
court, in many cases, has construed section 793, Code of
1906 (section 577, Hemingway's Code), as prohibiting
the court from giving an instruction unless requested by
one of the parties to the cause.   And it has often held in
cases, thoroughly familiar to the bench and bar of the
state, that a party to a cause cannot complain at the
action of the court in failing to give an instruction to the
jury not requested by such party.   *Tatum* v. *State, supra,*
is one of the last cases on the subject.   To accede to ap-
pellant's view, we think these cases would have to be
overruled.   Before a party can complain on appeal of
any action of the trial court, such action must have been
prejudicial to him, and, in addition, must either have
been brought about by the action of the court in denying
some request of his or granting some request of his
adversary.   The appellant cannot put the trial court
in error on account of a refusal to grant an instruc-
tion unless he has requested the giving of such instruc-
tion.   In a criminal case, the court might be justified
in refusing an instruction for one party and be justified
in granting the same instruction at the request of the
other party.   Take for instance, the present case:   The
court may have refused the manslaughter instruction
asked for by the state, doubting whether there was any
element of manslaughter in the case.   Resolving such
doubt in favor of appellant, as should have been done, the
court was justified in refusing the state's request.   On
the other hand, the court would have been justified in
giving the manslaughter instruction at the request of
defendant because of such doubt.

*Affirmed.*