## IVEY *v.* STATE.

(Division B. Nov. 19, 1928. Suggestion of Error Overruled January 21, 1929.)

[119 So. 507. No. 27120.]

62

*R. L. Corban, Jr.,* of Fayette, for appellant.

*Truly & Truly,* of Fayette, for appellant.

64

*L. T. Kennedy* and *W. A. Geisenberger,* both of Natchez, for appellant.

*Rufus Creekmore,* Assistant Attorney-General, for the state.

Argued orally by *R. L. Corban, Jr., Everett Truly* and *W. A. Geisenberg,* for appellant, and by *Rufus Creekmore,* Assistant Attorney-General, for appellee.

PACK, J., delivered the opinion of the court.

Appellant was indicted, tried and convicted of the murder of his wife, and sentenced by the court to imprisonment for life. The killing occurred in a small storehouse owned and operated by appellant, about one mile from the town of Fayette. The store was about fourteen by sixteen feet in size, counters being at the rear end and on both sides, and the door opening in the front. Shortly after the killing and in the early afternoon, the lifeless body of the deceased was found lying in the store, with the door closed. Blood stains and a portion of the brains were found on the floor and near the door. There were two wounds on the body;

one bullet entered about the middle of the shoulder blade, the other in the back of the head, lodging below the eye. Appellant admitted the killing, but claimed self-defense. The state introduced no eyewitnesses to the shooting, but relied upon the physical facts, and the statement of appellant made shortly afterward. For the defense, it was shown that the deceased was the aggressor in the fight; that the altercation arose over the failure of the deceased to prepare dinner for three men who were boarders in the Ivey home; that during the quarrel, Mrs. Ivey became enraged, cursed defendant, and began throwing several objects at him—a pair of small scales, a knife, and several "Big Chief" pop bottles were hurled at him by deceased; and that she continued throwing objects at him. It seems that the knife struck him, but inflicted no wound; that defendant was a weakly man, suffering from an aneurysm of the heart aorta, and unable to engage in physical encounters. He got a pistol from under the counter, and shot first when deceased was throwing a pop bottle at him. This shot caused the wound in the shoulder. Mrs. Ivey then turned, and was getting another pop bottle to throw at him, when the second shot was fired, inflicting the fatal wound in the head. There are several assignments of error.

The circuit judge in vacation caused the clerk to enter an order pretermitting the regular February, 1928, term of the circuit court of Jefferson county. This order was dated January 23, 1928. Three days thereafter the judge, still in vacation, rescinded the former order pretermitting the regular court term, and instructed the sheriff and chancery and circuit clerks to draw the jury as provided by section 2342, Hemingway's 1927 Code, for the regular February term of court.

Upon the convening of court, but before any jurors were called or impaneled, defendant presented to the court a motion, challenging the authority of the judge to

hold the regular February term, on the ground that the term having been pretermitted by order of the judge, he had no authority to vacate or rescind the same in vacation. The court overruled the motion; and this action of the court is assigned as error.

It is argued that the judge had authority to pretermit the court term, and, having exercised this authority by causing the order to be entered on the minutes, he had no authority to vacate and rescind the order.

Has a circuit judge the authority to pretermit a term of court?

It is provided by section 158 of the Constitution that—

"A circuit court shall be held in each county at least twice in each year, and the judges of said courts may interchange circuits with each other in such manner as may be provided by law."

This court had under review this section, together with section 264, in *Walton* v. *State,* 147 Miss. 851, 112 So. 790, and said, in part:

"It is manifest from the two sections, construed in the light of the common law and the statute existing at the time the Constitution was ordained and established, that the court shall be held at stated times, and that it was also contemplated that at *each* term of the court, grand and petit jurors would be drawn from the list provided by law, if they were needed, for such term. In other words, the Constitution intended to provide for a legal method of establishing suitable lists of jurors, and drawing from such lists of jurors at *each* term of the court."

It is argued, however, that this constitutional requirement could be complied with in Jefferson county, even though the regular term be pretermitted, because of the statute providing for a May term for civil business only. Manifestly the two terms required by section 158 had reference to a term of court organized and equipped for criminal cases. *Walton* v. *State, supra; Perkins* v.

*State,* 148 Miss. 608, 114 So. 392. It is a mandatory requirement, aiding the enforcement of the constitutional guaranty of "a speedy and public trial by an impartial jury of the county where the offense was committed."

Section 745, Hemingway's 1927 Code (section 709, Hemingway's 1917 Code; section 989, Code of 1906), provides:

"If the circuit judge or chancellor fail to attend at any term of the court, it shall stand adjourned from day to day until the fifth day, when, if the judge or chancellor shall not appear and open court, it shall stand adjourned without day; but, by virtue of a written order to that effect by the judge or chancellor, it may be adjourned by the clerk or sheriff to the next regular term, or to any earlier day, as the order may direct, and parties, witnesses, and jurors must attend accordingly."

We are aware that a custom prevails in some districts for courts to be pretermitted, as the circuit judge attempted to do in this instance. We have concluded, however, that the judges are entirely without authority so to do. If a circuit judge in vacation could pretermit one term of the court, by the same authority he might pretermit another, clearly violating the mandate of section 158 of the Constitution. In some counties, in fact, we surmise in a majority of the counties, two terms only are provided by statute to be held each year. If the Constitution is to be complied with, these terms of court must be held, except that they may be adjourned in keeping with section 745, Hemingway's 1927 Code, above quoted. *Ex parte Caples,* 58 Miss. 358. Being without authority to pretermit the regular term, it follows that the court was held as provided by law.

After the court had overruled the first motion, and before beginning to impanel the grand and petit juries, appellant presented a motion challenging the manner in which the jurors had been drawn for the term. The sheriff and the chancery and circuit clerks were directed

by the judge, and as authorized by section 2188, Hemingway's 1917 Code (section 2342, Hemingway's 1927 Code; section 2696, Code of 1906), to draw the names of those who were to make up the juries for the term.

The general statutory scheme for procuring jurors is outlined in chapter 41, vol. 1, Hemingway's 1927 Code (chapter 40, Hemingway's 1917 Code; chapter 72, Code of 1906). Its essential provisions are:

(a) The board of supervisors, at its first meeting each year, shall select and make a list of persons who are to serve during the ensuing year, taking the names as they conveniently can from the several supervisors' districts in proportion to the number of qualified electors in each.

(b) The clerk shall put the names from each supervisor's district in a separate box or compartment, which shall be kept locked except when jurors are to be drawn.

(c) The jurors' names shall be drawn from each box in regular order, until a sufficient number for the term of court is drawn.

Underlying the whole scheme is the idea that jurors shall be drawn by lot or chance.

It is averred in appellant's motion that the sheriff stood in front of the open jury box, in the presence of the two clerks, and could see into every compartment when names of the jurors for the term were being drawn; that he did not draw a name until he could see what name he was drawing, and drew only such names as he desired. After hearing the proof on this motion, the court overruled it, thereby holding that the proof did not sustain the averments of the motion. The sheriff testified that some names in the compartments were visible, and some were not; that when two or three names were lying "face up" he would try not to draw all from the same district. The following inquiry was made by the court:

"Q. Did you purposely select any man to serve on this jury? A. No, sir.

"Q. You merely drew the names, and some you saw and some you did not? A. Yes, sir.

"Q. You had no desire to put one man rather than another on the jury? A. No, sir.

"Q. You reached in and got the names of the jurors and called them out in the presence of both clerks? A. Yes, sir.

"Q. Did you select any special man for any special reason on this jury? A. No, sir."

We think the trial court, from this testimony, was warranted in overruling the motion.

Appellants cite and rely upon *Shepherd* v. *State,* 89 Miss. 147, 42 So. 544, 10 Ann. Cas. 963, and *Cook* v. *State,* 90 Miss. 137, 43 So. 618. The facts here do not bring the case under the practice condemned in those cases. It was undisputed in the Shepherd case that the circuit judge wholly disregarded the statute in drawing the grand jury. The names were emptied from the boxes, and arranged on the table, when the judge himself selected such names as he desired to serve on the grand jury.

In *Cook's case, supra,* the sheriff and the two clerks took the names out of the jury box, spread them out before them, and each picked such names as he wanted to serve. In both instances there was a flagrant violation of the statute.

Appellant's motion for a special venire, and that a copy of the indictment and list of special venire be furnished him one whole day before the date of trial, was sustained. Copies of same were delivered to one of appellant's attorneys of record within the time by the circuit clerk. On receiving these copies the attorney remarked to the clerk:

"Mr. Owen, it is now eleven thirty A. M., Friday morning, February 10th. I accept service of these papers in behalf of Davis Ivey, but I am not waiving any rights and if there is an *i* not dotted or a *t* not crossed I will make a point of it."

Objections were made to the copies and to the method of serving them. On the original list there appeared "F. L. Cleveland," while on the copy the name appears "S. L. Cleveland," the latter being the correct name, and the name drawn and summoned, there being no F. L. Cleveland. The date shown on the indictment was defective; it read, "the 6th day of 6, 1928," when it should have read "the 6th day of February"—the last error being an inadvertence of the clerk.

As stated, these copies were delivered by the clerk, but it is urged that they should have been served by the sheriff. The clerk was permitted to amend the copies so as to make them conform to the proof taken before the court. Appellant then contended that he was entitled to another full day before trial. These errors, if such they can be called, were certainly not prejudicial to appellant. The objection as to identity of names is settled against appellant by *McCarty* v. *State*, 26 Miss. 299.

It is urged that the sheriff, and no other, was the proper officer to deliver these papers, citing sections 3139 and 3152 of Hemingway's 1927 Code. It is our view that these copies constitute neither process nor notice, as contemplated by these statutes. The further answer is that section 1239 of Hemingway's 1917 Code (section 1302 of Hemingway's 1927 Code; section 1481, Code of 1906), does not require service upon the defendant. The language used is:

"Any person indicted for a capital crime shall, if demanded by him, by motion in writing, before the completion of the drawing of the special venire, have a copy of the indictment and a list of the special venire summoned for his trial *delivered* to him or his counsel at least one entire day before said trial."

Furthermore, appellant is in no position to complain because his counsel accepted service of the papers, re-

serving the right to make any point as to their irregularity or insufficiency.

We find no error in the action of the court in overruling the motion for a continuance on the ground of the absent witness, Du Bois. This motion was filed and presented to the court when the parties were called upon to announce. At that time Du Bois was absent and in the state of Louisiana. Appellant contends that, although the witness was without the jurisdiction of the court, he expected shortly to return, which entitled appellant to a continuance. Appellant cites and relies upon *Cade* v. *State,* 96 Miss. 434, 50 So. 555, and *Knox* v. *State,* 97 Miss. 523, 52 So. 695.

Refusal to continue a case on the ground of the absence of a witness is not reversible error, unless it is shown that the defendant, after the motion is overruled, continued to use the process of the court up to and during the trial for the attendance of the witness. If he fails to secure the presence of the witness at the trial, diligent effort should be made to secure the attendance of the witness for examination on a motion for a new trial, or the affidavit of such witness should be secured, if possible, setting out what his testimony would be if present in court. Appellant did not comply with this rule. *Lamar* v. *State,* 63 Miss. 265; *Ware* v. *State,* 133 Miss. 837, 98 So. 229; *Cox* v. *State,* 138 Miss. 370, 103 So. 129; *Everett* v. *State,* 147 Miss. 570, 113 So. 186.

The next assignment is that instruction No. 2, given the state, did not require the jury to believe "from the evidence," etc., in order to convict. This was error, but the omission was cured by instructions given the defendant, supplying this omission. This falls under the familiar rule that all the instructions given in the case for both sides shall be considered together. If an error in one is cured by another, and when, considered as a whole, the law of the case is correctly announced, such error will not be reversible.

Appellant strenuously urges that the evidence was insufficient to warrant a conviction. We think the physical facts make it a case for the jury. The fact that one shot was in the back or shoulder blade, the other, the death wound, being in the back of the head, the position of blood stains and portions of brain near the door, coupled with the attempted explanation of appellant, who testified in the case, were some of the circumstances warranting the submission of the case to the jury. *Stubblefield* v. *State,* 142 Miss. 787, 107 So. 663; *Grady* v. *State,* 144 Miss. 778, 110 So. 225; *McFatter* v. *State,* 147 Miss. 133, 113 So. 187; *Sullivan* v. *State* (Miss.), 115 So. 552.

Finding no reversible error, the case will be affirmed.

*Affirmed.*