## BENNETT *v.* STATE.[*]

(Division B.   March 4, 1929.)

[120 So. 837.   No. 27516.]

---

[*]Corpus Juris-Cyc. References: Homicide, 30CJ, section 350, p. 142, n. 74; section 561, p. 316, n. 68; On the rule as to presumption of malice from act of killing, see annotation in 4 L. R. A. (N. S.) 934; 38 L. R. A. (N. S.) 1078; 13 R. C. L. 770; 3 R. C. L. Supp. 82; 4 R. C. L. Supp. 832; 5 R. C. L. Supp. 709.

*G. H. Banks* and *R. S. Majure,* for appellant.

*Rufus Creekmore,* Assistant Attorney-General, for the state.

ETHRIDGE, P. J. The appellant was indicted on a charge of murder, and convicted of manslaughter, and sentenced to serve a term of five years in the state penitentiary.

The appellant relies upon the insufficiency of the evidence to sustain the conviction. It appears from the record that about the 1st day of May, 1926, the appellant killed his wife. After the killing he went, in company with a man name Gipson, to the town of Newton, stating that he was going to see a doctor, and that he was suffering with his kidneys. On reaching the town of Newton, Gipson asked appellant what doctor he desired to go to, and appellant stated that it did not make much difference. They drove in front of a drug store in the town of Newton and Gipson stated to the appellant that he would carry him back home, and then the appellant told Gipson about the killing and that he could not go back. Thereupon Gipson took the appellant to the town of Decatur, the county site, and turned him over to the sheriff.

Appellant's statement to Gipson was that his wife fell out with him about some matter and got an axe after him; that he took the axe away from her, and then she turned to the dresser and got a pistol; that he threw the axe and struck her and she fell; and that he then took the small child of theirs to a sister of appellant.

There were no witnesses other than the child, who was incompetent as a witness to testify.

The body of the deceased was found lying on the floor in the bedroom close beside the dresser. There was a deep wound, inflicted by the axe, at the juncture of the neck and shoulder on the left side some four or five inches long extending down into the neck, cutting the throat so that a part of the food eaten by the woman had been discharged from the wound upon the floor. The wound was deeper at the back than towards the front, and the indications were that the blow was inflicted from behind. One side of the woman's hair was combed, while the other side was wrapped in the knots, or plaits, customarily, or frequently, used by negro women. A comb was found several feet from the body. Blood was spattered on the wash stand and dresser and on the wall between the two. A short distance from the house an axe was found which had blood over the blade and on the handle. The blood stains on the axe indicated that the back part of the blade had cut deeper into the flesh than the front part.

The defendant testified in his own behalf that he killed his wife, but that he killed her in self-defense. He stated that she had threatened him prior to the killing, and that such threats had been communicated to him; that on the day of the homicide as he came home to dinner, he saw his wife take something out of her dress, which he asked her about, and she flew into a rage and threatened to kill him; and that she went into the yard and got the axe and made an attack on him. He took the axe away from her, and she rushed to the dresser drawer, got a pistol, and tried to shoot him, and that he took the axe and struck her with it and killed her.

The defendant testified that his wife weighed about one hundred and forty-six pounds, and that he weighed about one hundred and sixty-six pounds. Other witnesses, who viewed the body and knew the deceased, estimated her weight at one hundred and ten pounds. Taking all the facts in the record together, the evidence is sufficient to sustain a conviction. The defendant had

taken the axe, according to his own story, from his wife; he had sufficient strength to overcome her resistance as to the axe, and could also have taken the pistol from her, conceding his statement to be true.

The killing with a deadly weapon is assumed to be malicious, and therefore murder, and before the presumption disappears the facts of the killing must appear in the evidence and must change the character of the killing, either showing justification or necessity, before it is reduced from murder. If the facts relied upon to change such presumption are unreasonable and improbable, or if they are contradicted by physical facts and circumstances in evidence, then the jury may find a verdict either of murder or manslaughter, according to the circumstances and facts in evidence. *Stubblefield* v. *State,* 142 Miss. 787, 107 So. 663; *McFatter* v. *State,* 147 Miss. 133, 113 So. 187; *McGehee* v. *State,* 138 Miss. 822, 104 So. 150; *Grady* v. *State,* 144 Miss. 778, 110 So. 225; *Sullivan* v. *State,* 149 Miss. 412, 115 So. 552; *Ivey* v. *State* (Miss.), 119 So. 507.

The judgment of the court will be affirmed.

*Affirmed.*