ROBERTSON, Justice:
The appellant, George Hendrieth, alias George Taylor, was found guilty of murder by a jury in the Circuit Court of Jackson County, Mississippi, and his punishment was fixed by the jury at life imprisonment in the state penitentiary.
The appellant contends that there were five errors committed by the lower court. We will discuss only three of the errors assigned. The appellant complains that the court erred in granting the following instruction :
“The court instructs the jury for the State that malice aforethought mentioned in the indictment in this case may be presumed from the unlawful and deliberate use of a deadly weapon.”
The appellant concedes that unless there was evidence of justification or necessity for the killing this instruction was proper under the holdings of this Court in Dickins v. State, 208 Miss. 69, 43 So.2d 366, 887 (1949), and Hughes v. State, 207 Miss. 594, 42 So.2d 805 (1949).
There were no eyewitnesses to this killing, except the appellant, and he did not testify. The circumstantial evidence was that the appellant, Jack Davis, and others were engaged in a card game known as “skin.” It was night and the game was being played in the back room of a cafe. During the course of the game Davis paid the appellant $14.00 on a $20.00 debt, then proceeded to win back this money. The appellant urged Davis to pay him the balance of $6.00, but Davis refused. However, no threats were made, nor were any weapons displayed. After losing his money, the appellant got up and left the cafe. About five minutes later, the game broke up and Davis left.
In about ten minutes, the manager of the cafe, Joe Collins, who had also been in the game, walked outside to see if anybody was parked in his driveway. He noticed a man’s feet sticking out from between two parked cars. He called for a light and Herman Jacobs came out with some matches. Jack Davis was lying on his back, dead. His head was bloody, there was blood on the ground around him, and it appeared that he had been turned over. Both of his trousers’ pockets were pulled out. No knife, pistol or weapon of any kind was found on the deceased or on the ground around him. The pathologist who performed a complete autopsy testified that the deceased had five deep lacerations of his skull, any one of which could have killed him.
The appellant was apprehended some hours later at another cafe. The policeman searching him found some bills in his right front pocket, which turned out to be some of the same money won by the deceased in the card game. In a written statement the appellant tried to explain what happened:
“I got up and left about 10:00 P.M. I left around the way I came in and went out around the front door. I walked around to where the little car was parked. I was about to get in and leave when he came out right behind me. I *219 turned walking back to the back of the car. I said, ‘Jack, that was a pretty nice way you talked to me about the money you owed me. You could have said you wasn’t able to pay or something like that.’ He said, ‘- - your money,’ and grabs me in the collar and pushed me into the car. I fell against the car and the little window was up. (It’s an Opel Station Wagon, White.) I just felt something under my hands back there and I just picked it up and started swinging. I don’t know how many times I hit him. It was almost like panic with me. * * *”
In Hughes, supra in disposing of a similar assignment of error, this Court stated the applicable rule of law:
In the case of Durr v. State, 175 Miss. 797, 168 So. 65, 68, this court said: ‘The presumption of malice which arises from the killing of a human being with a deadly weapon will prevail and characterize the act as murder, unless the facts in evidence change the character of the killing by showing either justification or necessity.’ To the same effect are the cases of Crockerham v. State, 202 Miss. 25, 30 So.2d 417, and Bennett v. State, 152 Miss. 728, 120 So. 837. Appellant relies upon the principle announced in many decisions of this court that where the facts are all in evidence presumptions disappear and that it is improper to grant such an instruction in such cases. However, the facts are not all in evidence here, and the appellant did not produce any evidence whatever tending to show either justification or necessity for the assault; consequently the granting of the instruction in this case is not error. (207 Miss. at 604, 42 So.2d at 807-808) (Emphasis supplied)
Later in 1949, this Court decided Dickins v. State, supra. The giving of an instruction on the presumption of malice from the unlawful and deliberate use of a deadly weapon was again questioned. This Court reiterated the applicable rule of law in these words:
The law does presume malice from the killing of a human being with a deadly weapon, and this presumption, as is the case with all similar legal presumptions, prevails and characterizes the homicide as murder, unless facts are introduced in evidence changing the character of the killing and showing either justification or necessity, * * * unless the facts in evidence explain the character of the killing, then this presumption still stands, and the State is entitled to an instruction announcing this legal principle. This question has already been decided in Durr v. State, 175 Miss. 797, 168 So. 65, 68, where this Court said: ‘The presumption of malice which arises from the killing of a human being with a deadly weapon will prevail and characterize the act as murder, unless the facts in evidence change the character of the killing by showing either justification or necessity.’ (208 Miss. at 92-93, 43 So.2d at 373-374 (Emphasis supplied).
The appellant did not take the stand in his own defense. Even his written statement was put in evidence by the State, not by the accused. Does his statement change the character of the killing by showing either justification or necessity? We think not.
According to the accused’s own statement he was about to get in his car and leave, but when he saw Davis, he turned and walked to the back of the car so he could scold Davis. He got after Davis for refusing to pay him the balance of the debt. Appellant said that Davis used some curse words, grabbed him by the collar and pushed him into the car. By his own admission, the appellant then grabbed a large hammer and repeatedly struck Davis with great force.
The rule of law is that facts must be “introduced in evidence changing the character of the killing and showing either justification or necessity.” By no stretch of the imagination can it be said that the appellant’s own words show that he acted in self-defense or that he was justified in *220 beating’ Davis to death with a hammer. Appellant does not even contend that Davis had a weapon of any kind. He does not even say that Davis had his hands on his neck — he merely says that Davis grabbed him by the collar and pushed him. Appellant’s own companions on that night testified that Davis did not have a weapon of any kind when he was gambling with them. The investigating officers testified that no weapon of any kind was found on the deceased or on the ground around him.
We feel that the jury reached about the only conclusion that they could reach from the physical facts in evidence and the very sketchy and incomplete and unreasonable statement that the appellant saw fit to make. The facts in evidence show neither justification nor necessity and under our previous rulings, they must do so in order to overcome the presumption of malice from the unlawful and deliberate use of a deadly weapon. We think the trial judge was correct in granting the presumption of malice instruction in this particular case.
We further feel that even if the granting of this instruction were error, that it was harmless error. Rule 11 of this Court provides:
No judgment shall he reversed on the ground of misdirection to the jury, or the improper admission or exclusion of evidence, or for error as to the matter of pleading or procedure, unless it shall affirmatively appear, from the whole record, that such judgment has resulted in a miscarriage of justice. (Emphasis supplied)
We certainly cannot say that it affirmatively appears from the whole record that there has been a miscarriage of justice.
The appellant next contends that the following instruction should have been granted him:
“The Court instructs the jury for the defendant that the Defendant is never required to prove his innocence, and in order for him to be acquitted, it is not necessary that the jury should be satisfied in their minds that he is in fact innocent, but whenever there arises out of the evidence a reasonable probability that he is innocent, then he is entitled to an acquittal, for a reasonable probability of innocence is always reasonable doubt of guilt. This probability of innocence need not be as reasonable as the probability of guilt. In other words although the theory that he is guilty is more reasonable than the theory that he is innocent, yet if there arises out of the evidence, and there is supported by the evidence any reasonable theory under which the Defendant may probably be innocent, he is entitled to be acquitted.”
The appellant cites as authority for the granting of this instruction McNair v. State, 215 Miss. 510, 61 So.2d 338 (1952). The instruction in McNair was a one-sentence instruction, short and to the point. Appellant attempted to paraphrase that instruction and elaborate on it. The end result of this double paraphrasing is a confusing and misleading instruction. It would have been necessary for the jury to parse each word to try to get its meaning, and this Court is not sure that even that would have been sufficient. The appellant was granted a long and detailed instruction on reasonable doubt, proof to a moral certainty, and a possible reasonable hypothesis consistent with innocence, which embodied the same rules of construction attempted to be set forth in the refused instruction.
The so-called two-theory type of instruction should not be given where the guilt of the accused does not rest entirely on circumstantial evidence. We so said in Yarbrough v. State, 202 Miss. 820, 32 So.2d 436 (1947). In this case guilt does not rest entirely on circumstantial evidence. The trial court was correct in refusing to give this paraphrased, confusing and misleading instruction.
The appellant next contends that his trousers (which bore blood stains of *221 the same type of blood as that of the deceased) should not have been admitted into evidence because they were taken from the appellant while he was in jail and when his appointed counsel was not present.
Suffice it to say that this is not the type of “testimonial” evidence which is protected by the privilege against self-incrimination and the collateral right to the presence of counsel. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).
Actually, the admission into evidence of the appellant’s trousers was pure surplus-age. Whether the appellant killed Jack Davis was not even an issue in the case. Appellant admitted that he hit the deceased with a hammer not one but many times. The doctor testified that any one of the five blows could have been fatal.
The judgment of the trial court is affirmed.
Affirmed.
ETHRIDGE, C. J., GILLESPIE, P. J., and JONES, BRADY, PATTERSON and INZER, JJ., concur.
RODGERS and SMITH, JJ., dissent.