EUGENE FLOWERS v. STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Evidence. Direct evidence in rebuttal.*

   In homicide, after the defense has rested, it is error to admit testi-
   mony for the state which is not in rebuttal of that for the de-
   fendant, but direct, in the absence of a showing that it came to
   the state's knowledge after the conclusion of its evidence.

2. SAME. *District attorney as witness. Practice.*

   In homicide it is error to permit a district attorney, who has been
   improperly allowed to introduce the direct testimony of a wit-
   ness offered in rebuttal, to fortify the testimony of such wit-
   ness by that of himself in relation to and explanatory of pre-
   vious statements made by the witness; and such error is not
   cured by the subsequent exclusion of the district attorney's testi-
   mony.

3. SAME. *Right of defendant. Unfair restrictions.*

   It is error in homicide, after improperly admitting in rebuttal
   direct testimony for the state as to dying declarations, to exclude
   testimony for the defense in conflict therewith.

FROM the circuit court of Copiah county.

HON. DAVID M. MILLER, Judge.

The appellant, Eugene Flowers, was convicted of the murder
of George Jones, and the jury fixed his punishment at life im-
prisonment in the penitentiary. From the judgment sentencing
him accordingly, he appealed to the supreme court. The opin-
ion states the facts of the case.

*M. S. McNeal,* and *Harris, Powell & Harris,* for appellant.

In this case, after the state had introduced its testimony and
rested, the defense introduced several witnesses, who clearly es-
tablished the fact that he acted in self-defense. After the de-
fense had rested, the state for the first time, in order to bolster
up its case, introduced what purported to be a dying declaration
by the deceased George Jones, claiming that his testimony was

introduced by way of rebuttal of the testimony of Richard Brown, a witness for the defendant.

The court will readily see, from an inspection of the record, that this dying declaration was not in rebuttal of Richard Brown's testimony, but was really evidence in chief. Appellant objected to the introduction of this testimony at the time, and moved to exclude it, but the court overruled this motion. After the dying declaration had been allowed to be introduced and the case thus reopened by the state, appellant requested the privilege of introducing further eyewitnesses to the killing, which the court refused to allow him to do.

We contend for appellant that, the state and defense having rested, it was bad practice, at least, and very unfair to the defendant, to allow this dying declaration to be introduced; but if the case was reopened by the state, in all fairness the same privilege should have been extended to the defendant. The practice of holding back testimony by plaintiff and introducing it at the last, after the defendant rested, is condemned by this court, even in civil cases. *Jamison* v. *Moseley,* 69 Miss., 485.

But this is not the worst feature connected with the admission of this dying declaration. Charlie Bass, upon whose testimony the dying declaration was established, on cross-examination stated that he was present when the case was tried on *habeas corpus* by the chancellor. He was questioned by the counsel for the defense on the very day of the present trial, and yet never opened his mouth about any dying declaration having been made; on the contrary, he stated that he knew nothing of the case. To bolster up this witness, the district attorney took the stand, and, over the objection of the defendant, testified that this witness, Charlie Bass, had told him the same thing he had told the counsel for the defense, and that in truth and in fact Charlie Bass did not know that the dying declaration was testimony.

The district attorney's testimony was afterwards ruled out by the court, but the damage had been done, and his witness had

been supported by his testimony. This was manifest error, as shown in the case of *Chism* v. *State,* 70 Miss., 742; *Johnson* v. *State,* 80 Miss., 798; and *Ely* v. *Railroad Co.,* 83 Miss., 519.

The court again erred in this: After the testimony in regard to the dying declaration had been admitted over the objection of defendant, the defendant again moved to exclude such testimony; the court overruled this motion, except as to the testimony of Richard Jones, and ruled out his testimony. Bass, witness for the state, had testified that Richard Jones was present when the dying declaration was made. This Jones was the father of the dead man, and he himself testified that he was present with his son before he died, but he further testified that no dying declaration was made. So the result of the court's ruling on defendant's motion to exclude the dying declaration and testimony in regard to it was that all such testimony as favored the state was retained, and the only part of it which favored the defendant was excluded; the defendant asked for bread, and was given a stone. This was manifest error.

Again, all of John Lynch's testimony was ruled out except that portion of the statement in which he says that deceased said, "If my gun had fired, I would have killed Jean." This was clearly improper.

*William Williams,* attorney-general, for appellee.

Dying declarations are treated as other testimony. They may be impeached in any of the modes by which the evidence of the declarant could have been impeached had he been alive and testifying upon the witness stand. 10 Am. & Eng. Ency. Law (2d ed.), 386.

The credibility of dying declarations is determined largely by the same rules that are applied to other testimony. 10 Am. & Eng. Ency. Law (2d ed.), 386.

Persons whose declarations are admitted as dying declarations are considered as standing in the same situation as if they were sworn. If the declarant, if living, would have been a

competent witness, his declarations are admissible; if he would have been incompetent to testify, his declarations are inadmissible. 1 Greenleaf on Evidence (15th ed.), 227; Wharton's Cr. Ev. (9th ed.), 218.

Since a dying declaration is competent evidence and stands in lieu of the declarant, if living, it may be introduced at any stage in the trial at which the declarant, if living, could be introduced as a witness to testify. It may be dealt with relative to the order of introduction just as if it were a living witness or any other kind of proof.

The trial court has, in the interest of justice, a broad discretion in the order in which proof may be made, and unless it is manifest that such discretion has been abused, its action will not be disturbed. *Cargill* v. *Commonwealth,* 93 Ky., 580.

The order of testimony is a matter which must necessarily be left largely in the judgment of the trial courts, and unless a clear case of abuse is shown, it is no ground for reversal. *State* v. *Murphy,* 118 Mo., 15; *Webb* v. *State,* 29 Ohio, 356; *Moore's Case,* 96 Tenn., 216; *Winterton* v. *Railroad Co.,* 73 Miss., 836.

The state made out a clear case of murder without the dying declaration, and rested. The defendant offered testimony to show that the deceased was the aggressor in the difficulty in which he was killed. The state offered in rebuttal to this testimony the declaration of the deceased made just prior to his death.

The state having introduced testimony to show appellant to be the aggressor in the difficulty, it is submitted that it is almost impossible to conceive a more manifest instance of rebuttal than is here presented. *Moseley* v. *Jamison,* 66 Miss., 52.

"That evidence which is given by a party in the cause to explain, repel, counteract, or deprive facts given in the evidence on the other side" is rebutting evidence. 2 Bouvier's Law Dictionary, 830.

As a general rule, anything may be given as rebutting evidence which is a direct reply to that produced on the other side.

Counsel merely assumes that the evidence objected to was not rebutting in its character, but original.  *People* v. *Page,* 1 Idaho, 195; *Marshall* v. *Davies,* 78 N. Y., 420; *O'Donnell's Case,* 12 Pac. Rep., 747.

It was not error for the court to refuse to permit counsel for appellant to introduce testimony in surrebuttal which had been introduced by him before he closed his case.   Counsel attempted to prove by witness Norah Brown the same facts which were testified to before the case of appellant was closed.   The effect of this would have simply been to scotch witnesses who had testified before the state offered evidence in rebuttal.

Norah Brown was in court, and should have been introduced, if at all, before the defendant closed his case.   *Jackson* v. *State,* 64 Ga., 344.

The dying declaration was introduced at the proper time, it was in rebuttal to the testimony introduced by the defendant, and the defendant was permitted to rebut same.

Argued orally by *Robert Powell,* and *M. S. McNeal,* for appellant, and by *William Williams,* attorney-general, for appellee.

CALHOON, J., delivered the opinion of the court.

Flowers was convicted of murder in what the record evidence shows to be a very close case.   The state rested on the testimony of a single witness, Lula Bass.   The pith of her statement is that she was on her way to the house of one Rich Brown, whom she overtook, and with whom she walked on until the two came to where appellant and deceased were.   They seemed to be "fussing," and Brown told them to "quit that foolishness," and told George Jones, the deceased, to come on with them; that deceased came on behind them to Brown's house, but did not go in with them, but stopped at the gatepost, laid his gun, a breechloader, on the gatepost "with his hands across it."   She then proceeded to say that "after a while Jean [the accused] came

on down, and had his pistol half in his hand and half in his pocket," and walked by the deceased, walked to where witness was, and then back to deceased, and then she heard deceased say, "If you lay down a quarter, I will pick it up," when accused shot him, firing twice; and that after he was shot, and not before, the deceased tried to get his gun up as if to shoot, but could not. This testimony, if believed by the jury, would warrant conviction. The defense then introduced three witnesses, whose testimony, if believed by the jury, made out a clear case of self-defense, and rested. One of these witnesses—Rich Brown—testified that deceased came on behind him (the appellant) at a distance of fifty yards, cursing the appellant, and, with his gun in his hand, came into his yard, and snapped his gun at Flowers, broke it down and put in another cartridge, and as he threw it up again, Flowers shot his pistol; that the appellant fired his pistol three times; and that the witness Lula Bass was placed where she could not have seen these acts. Only one shot struck deceased. Thereupon, when the defense rested, the state introduced, for the first time, one Charlie Bass, a witness stated to be in rebuttal of Rich Brown. Bass testified, over objection, that he saw the deceased an hour before he died, and deceased said he was going to die; that he made no attempt to shoot appellant; that appellant shot him for nothing, about an honest quarter that he (appellant) owed deceased, and deceased was not doing anything. On cross-examination Bass stated that he had told the district attorney about this testimony, without stating when he told him or where he told him. The state's attorney here took the stand as a witness, and testified, over objection, that the witness Charlie Bass had told him that he knew nothing of the case, and that he then asked Bass if he was with deceased when he died, and Bass said he was, and then the state's attorney testified that Bass did not know that that was evidence. This evidence of dying declarations was in no sense in rebuttal. It was direct testimony, and of a nature which generally has very great effect on ordinary jurors; and this

permitting of direct testimony in rebuttal is condemned as very bad practice in this state and everywhere, though we are not prepared to say that we would reverse for this alone. Direct testimony should not be permitted to be produced in rebuttal unless there is some statement that it came to the knowledge of the party after the conclusion of the testimony, and there is nothing here to show this. We think, however, that it was clearly error to permit the state's attorney to testify in order to bolster up his witness. This gave the defendant in this close case too heavy a burden to bear. It is true the court excluded this testimony of the state's attorney, but it was too late; it had had its effect on the jury. The state then introduced Meredith Alexander, who testified that the deceased said that he was killed for nothing, for an honest quarter which appellant owed him. The state then introduced Rich Jones, who testified that he was present when George Jones died, and that " 'long toward the last" George said he could not stand it, and the witness supposed from that he was going to die, but he did not say anything about his going to die. The defense then asked the court to instruct the jury that all the testimony in regard to the dying declarations was not to be considered as evidence, because the proper foundation was not laid and because it would improperly admit in rebuttal direct testimony; and the court sustained the motion only as to the testimony of Richard Jones, but overruled it as to the testimony of the other witnesses.

It will thus be seen, in sustaining the motion only as to the testimony of Richard Jones, who was the father of the deceased, and was with him when he died, and who had testified that he did not know whether George knew he was going to die or not, the court in fact excluded only that part of the testimony which might be of advantage to the defendant; and this was error.

Here the state rested, and the defense introduced John Lynch as a witness, who testified that while deceased was lying on the ground where he was shot, Rich Brown's wife, mother of the deceased, told the deceased he had brought all this trouble

on himself; that she had tried to get him to go home, and he would not go; and told him that, if he had listened to her, he would not have been in this trouble; and he said: "Yes, if my gun had fired, I would have killed him." Here, on motion by the state, the court excluded all that this witness said except the answer that was made by the deceased, that, "If my gun had fired, I would have killed him." We think this was error. The court should have excluded all or none of it. The whole colloquy should have been admitted or none of it. It was necessary to show the relevancy of his statement about the gun. If part of the *res gestae,* all was admissible.

The defense then introduced Norah Brown, who was brought on in surrebuttal of the statements made by the dying man to Charlie Bass, and, the jury being retired, it was proposed to show by Norah that she saw the dead man before he was shot, and that he was cursing and quarreling inside of the yard at the post, when right here the state objected to the testimony, and the defense told the court that it expected to prove by this witness, in rebuttal of the dying declarations, that the deceased was the aggressor in the difficulty, and that he raised his gun to shoot the defendant before the defendant ever fired. The court sustained the objection, but permitted the defendant to show by this witness anything in rebuttal of what the state had offered in rebuttal only. This was error. The court had permitted the testimony as to the dying declarations as in rebuttal, when it was clearly direct testimony, and, having done this, it was unjust to the prisoner to hold him down to the strict rules of practice. If the dying declarations had been offered originally, the defense would not, perhaps, have offered this last witness.

*Reversed and remanded.*