## SULLIVAN *v.* STATE.*

(Division B    Feb. 6, 1928.    Suggestion of Error Overruled March 5, 1928.)

[115 So. 552.    No. 26954.]

1. HOMICIDE. *Evidence as to justification in murder prosecution held for jury.*

   In prosecution for murder, evidence as to justification *held* for jury.

2. CRIMINAL LAW. *Testimony that deceased was not shot while scuffling on ground as contended by defendant held properly admitted in rebuttal.*

   Where theory of defendant in prosecution for murder was that he shot deceased while scuffling with companion on the ground, testimony tending to show that shooting was not done while deceased was on ground constituted rebuttal testimony and was properly admitted as such.

3. CRIMINAL LAW. *Permitting juror to separate from panel in company of bailiff for purpose of answering call of nature held not error.*

   In prosecution for murder, permitting one of defendants to separate from panel during recess for purpose of answering call of nature, during all of which time he was accompanied by bailiff with no opportunity to talk to or see any other person, *held* not error.

4. CRIMINAL LAW. *Instruction as to disbelieving testimony of witness knowingly, corruptly, and falsely testifying held not erroneous.*

   In prosecution for murder, instruction as to jury's being warranted in disbelieving all of testimony of witness knowingly, corruptly, and falsely testifying *held* not erroneous.

*Corpus Juris-Cyc. References: Criminal Law, 16CJ, p. 867, n. 25; p. 1021, n. 48; p. 1077, n. 36; Homicide, 30CJ, p. 331, n. 27; On right of court to permit separation on jury in capital case, see annotation in 24 L. R. A. (N. S.) 777; 16 R. C. L. 309; 6 R. C. L. Supp. 957.

APPEAL from circuit court of Tallahatchie county, Second district.

HON. GREEK L. RICE, Judge.

Pat Sullivan was convicted of murder, and he appeals. Affirmed.

*Jas. T. Crawley,* for appellant.

There were no witnesses except the witnesses for the defense; therefore, unless the physical ;circumstances themselves are contradictory to the testimony of the defendant and his eyewitness, Smith, he is entitled to be acquitted. The evidence does not show in any way, manner, shape, form or to any degree that the killing did not occur just exactly as the witnesses for the defense testified it did. The physical facts rather corroborate than contradict the testimony of the defense. The fact that Sullivan carried his friend to a hospital in Greenwood, where he left him and then went on to Zama in Attala county, and sent word to the dead man's wife, is of itself a circumstance most strongly pointing to his innocence. The further fact that he left Zama and went back to Greenwood to give himself up is another circumstance very strongly in his favor. These circumstances are such as to entitle the defendant to their benefit. See *Williams* v. *State,* 98 So. 242. There certainly is no evidence in this case which is a positive contradiction of the defendant's evidence as to how the difficulty occurred. Taking the evidence for the defendant as being true, and we think it must be so taken, the killing is justifiable. *Hughston* v. *State,* 117 Miss. 311, 78 So. 182; *Anderson Gaddis* v. *State,* 110 So. 691 (Miss. 1926 not officially reported); *Cumberland* v. *State,* 110 Miss. 521.

One cannot be convicted of an offense upon evidence which merely raises a suspicion of guilt. *Hazlehurst* v. *Byrd,* 101 Miss. 57; *Jobe* v. *State,* 104 Miss. 860.

A defendant is never, under any circumstances or phase of any case, required to satisfy a jury of his in-

nocence. It is sufficient if the evidence taken as a whole, whether introduced by the state or by the defendant, leaves a question of his guilt in reasonable doubt. *Pollard* v. *State,* 53 Miss. 410; *Cunningham* v. *State,* 56 Miss. 269; *Hawthorne* v. *State,* 58 Miss. 778; *Smith* v. *State,* 58 Miss. 867; *Ingram* v. *State,* 62 Miss. 142; *Dawson* v. *State,* 62 Miss. 241; *Bishop* v. *State,* 62 Miss. 289.

While the jury were trying the appellant, one J. P. Jernberg was a bailiff to the jury. It appears that one of the jurors trying Pat Sullivan left the body of the jury down in the court house yard and went upstairs in the court house. It seems that the bailiff brought him up there. He left the main part of the jury down stairs and carried him upstairs in the court house on the second floor. It seems that the bailiff went with him in the jury room, and that they were away from the regular panel about ten minutes, and that he got no permission, either from the judge or defendant or defendant's counsel to separate the jury. A murder case such as this, during the trial, the defendant has the right to expect and demand that the entire jury stay together pending their deliberations. The trial by jury should be preserved from all extraneous influences.

*J. J. Breland,* for appellant.

The evidence is insufficient, as a matter of law, to show the guilt of the appellant beyond a reasonable doubt. In other words, the testimony as a whole, as shown by the record, shows that appellant, Pat Sullivan, killed the deceased, Homer Dewise, in the necessary defense of himself and G. B. Smith, the companion of the deceased and the appellant. Sullivan testified, and his testimony is not contradicted by the testimony of the state or the physical facts, that he shot Dewise, the deceased, to prevent Dewise from killing Smith and from killing himself. The physical facts, both as to the nature and character

of the wounds on the deceased, and the other facts and circumstances shown on and about the place where the killing took place, do not contradict the testimony of the appellant and the witness, Smith. There is no conflict in the testimony of the witnesses for the state, the facts and circumstances connected with this killing, as shown by the witnesses for the state, and the testimony of the appellant and the witness Smith which explained the facts and circumstances connected with the killing. There was, therefore, nothing for the jury to pass upon unless it could be left to the jury to decide whether the appellant and witness Smith were testifying to the truth or testifying falsely. We submit that it was not within the province of the jury to arbitrarily determine, without testimony, that the appellant and the witness Smith were not testifying to the truth and that the explanation or details of the killing were not as testified to by the appellant and Smith.

We recognize, as a principal of criminal law, that when one person, by the use of a deadly weapon, kills another, that killing is presumed to have been done unlawfully, and with malice aforethought. This presumption, however, will give way to the facts, when the killing has been explained to have been done in necessary self-defense of the defendant or any other person, and the defendant is entitled to be discharged as a matter of law. *Sides* v. *State*, 96 Miss. 638, 51 So. 465; *Riley* v. *State*, 109 Miss. 286, 68 So. 250; *Patty* v. *State*, 126 Miss. 94, 88 So. 498; *McGehee* v. *State*, 138 Miss. 822, 104 So. 150; *Strahan* v. *State*, 108 So. 502; *Anderson Gaddis* v. *State*, 110 So. 691; *Green* v. *State*, 28 Miss. 687; *Hawthorne* v. *State*, 58 Miss. 778; *Bishop* v. *State*, 62 Miss. 289; *Lamar* v. *State*, 63 Miss. 265.

The next assignment of error was an objection to testimony of H. H. Dogan, in rebuttal by the state in testimony offered by the defendant in rebuttal to the state's case in chief. The objection was that it was a part of

the state's proof on direct examination and part of the state's case in chief; that it was original matter and not in rebuttal of anything brought out by the defense; that this witness had been examined by the state and questioned especially as to the facts and circumstances and the physical facts at the place of the killing. Over the objection of defendant's counsel, this witness was allowed to testify in detail as to gunshot being found in the yard fence in front of this negro house near the scene of the killing and in the negro house. These were facts that had a direct bearing, if not explained, upon the guilt or innocence of the defendant and were facts within the knowledge of the witness when he testified on the direct examination. See *Reddick* v. *State,* 72 Miss. 1008; *Flowers* v. *State,* 85 Miss. 591, 37 So. 814.

The court below committed error in giving instruction number six to the state which is in words as follows: "The court instructs the jury, that you are the sole judges of the credibility of witnesses in the case, and, if you believe that any witness has knowingly, or corruptly and falsely testified as to any material fact in this case, you are warranted in disbelieving all the testimony of any such witness; and the court further charges the jury that in passing upon the credibility of the witness, you may consider the manner or demeanor of the witnesses while on the stand and the interest the witness may have in the case, if any such interest is shown." This instruction is clearly erroneous and misleading. In effect this tells the jury that, if they believe that any witness has knowingly testified falsely as to any material fact in the case, they will be warranted in disbelieving all the testimony of any such witness. An instruction, in discussing or defining the doctrine of "*falsus in uno*" must be correctly and aptly worded so that there can be no danger in misleading the jury. *Boykin* v. *State,* 86 Miss. 481, 38 So. 725.

*J. M. Kuykendall,* for the state.

From the brief of the appellant we have come to the conclusion that the only real point sought to be availed of is that the evidence is insufficient to support the verdict and that a peremptory instruction should have been given. The record clearly rebuts this theory.

The assignments of error having to do with the reception or rejection of evidence and the brief in support of the same fail to raise any suggestion of prejudicial error and for that reason we will not burden the court with an academic discussion of the same but simply call attention to the rule of this court number 11, and the case of *Jones* v. *State,* 104 Miss. 871.

A few recent cases in which proof of guilt was not so strong as in the instant case and in what the defendant sought to stand on his proof as against the circumstances and physical facts and in which this court held the proof sufficient, are: *Stubblefield* v. *State,* 142 Miss. 787; *Grady* v. *State,* 144 Miss. 778; *McFatter* v. *State,* 113 So. 187, 147 Miss. 133; *McGehee* v. *State,* 138 Miss. 822.

Counsel cites the *Gaddis case,* 110 So. 691, and in reply to that citation we submit that the case at bar is more like the *McFatter case,* 147 Miss. 133, 113 So. 187. The law of this case is well set out in *McGehee* v. *State,* 138 Miss. 822, a case cited in the brief of the appellant.

The opinion in the McGehee case has well summed up the law of this case. "It is true of course that when circumstances are truthfully developed that the inference drawn from the circumstances must be consistent with guilt, and inconsistent with any reasonable theory of innocence. But where the explanation is unreasonable on its face it is the province of the jury to determine whether the explanation is true or not. If the physical facts contradict the explanation and if it appears to the satisfaction of the jury that it is untrue, then the mere fact that the defendant testified to such statement does not

149 Miss.—27.

of itself entitle the defendant to an acquittal.'' ''The killing being admitted by Lorenzo McGehee and the facts and circumstances in evidence warranting the jury in finding the defendant's explanation thereof is unreasonable and untrue, the evidence is sufficient to sustain the conviction as to Lorenzo McGehee.'' The same is true in the instant case. See *Grady* v. *State*, 144 Miss. 784.

The contention of the appellant as to error arising from the alleged separation of the juror from his fellows is completely answered by the following cases. *Cunningham* v. *State*, 94 Miss. 228; *Johnson* v. *State*, 106 Miss. 94.

Orally argued by *J. J. Breland* and *Jas. G. Crawley*, for appellant, and *J. M. Kuykendall*, for the state.

PACK, J. Appellant appeals from a conviction and life sentence for murder. Appellant and Bunyan Smith were jointly indicted for the murder of Homer Dewise in the circuit court of the Second judicial district of Tallahatchie county. A severance was granted in the lower court.

The testimony for the state tends to show that Pat Sullivan, appellant, Bunyan Smith, and Homer Dewise, the deceased, all three white men, traveling in a Chevrolet roadster car, drove up to the house of a negro woman named Nancy, in the town of Philip, about nine or ten o'clock at night. All three men appeared to be under the influence of intoxicating liquor. Leaving the car parked in the street, the three men entered the house, apparently in perfectly good humor. They engaged in laughing, talking, and singing. Presently, the deceased took from his shirt bosom a pistol, being a .38 special, and inquired of John Miller, a negro man living in the house, if he knew of any one desiring to trade an automatic, and being answered in the negative deceased placed the pistol back inside his shirt bosom. Smith and deceased walked out into the back yard, while there the negro man, John Miller, and the appellant walked to the back porch. Thereupon, the deceased threatened to shoot them. All

four of the men returned into the house, when deceased
again pulled out his pistol and threw it on appellant, who
held up his hands and asked deceased not to shoot him.
Smith interceded, and deceased drew his pistol on Smith.
At this juncture, appellant and Miller ran out into the
back yard. The deceased insisted that he wanted to
shoot somebody. Smith suggested that if he wanted to
shoot, to shoot out the light, which was promptly done.
The negro woman, Nancy, disappeared from the scene
and was not present at any time after the light was shot
out. Deceased and Smith then walked out into the street
toward the car, and called to appellant, who went through
the back yard, into the street, and joined Smith, leaving
deceased in the street near the car.

Appellant and Smith decided to go to the home of one
Weems, a few hundred yards distant, whom all three of
the white men knew, for the purpose of procuring a gun,
and while they were gone, the deceased got into the car
and was sitting on the front seat under the steering
wheel. Smith and appellant told Weems that a man had
held them up, had taken their car away from them, and
they wanted to borrow a gun. As stated, Weems was
well acquainted with all three of the white men, being,
perhaps, better known to deceased. Neither Smith nor
appellant told Weems that Dewise was at Nancy's house,
or that he was the man causing the trouble. Weems
loaned them an automatic shotgun loaded with five shells
of squirrel shot, whereupon Smith and appellant re-
turned to the former scene, and found deceased sitting
on the front seat of the car. John Miller, still in the
back yard, heard either Smith or appellant command de-
ceased to get out of the car, the exact words used being,
"God damn you, get out of that car," which command
was repeated two or three times. Immediately after
hearing the last command, Miller heard a gun fire, and
heard some one exclaim, as if in pain, "Oh! Oh!" After
a lapse of a few seconds, the gun fired twice more, and he

heard no further outcry. He saw the car move on, after experiencing difficulty in backing out and turning. It was soon reported to Weems that a man had been killed. Driving his car down to the scene he saw by the headlight the body of the deceased lying in the street crumpled up, with the side of his face on the ground, but saw no pistol or other weapon. The pistol was never found nor its absence explained. Appellant and Smith drove to Greenwood, where Smith was left in a hospital. Appellant then drove the roadster to Attala county, having disconnected the shotgun and placed the parts underneath the seat of the car.

About daylight the next morning, two officers, Dogan and Simrall, reported at the scene to investigate, and found the lifeless body of Dewise in the street in front of Nancy's house. There was a trail of blood from the gate to the body of Dewise, and a puddle of blood where the body was lying. The blood stains were slight at the beginning, but increased toward the body. On examination, the body was found to have a shotgun wound on the left side of the face and the left ear; another wound in the right shoulder, circular in shape, about six inches in diameter, and another wound in the hip. All three of these wounds, apparently, had been inflicted by shots from the back. One of the arms was found to be swollen and bruised, and there was a wound across the chest about the size of an auto casing. Small shot were found in plank at top of a wire fence about four feet high, and small shot were found on the outside of the negro's house. The officers found no pistol or other weapons at or near the body. Late in the afternoon of the next day, the appellant returned to the hospital in Greenwood, and was there placed under arrest by the officer, Dogan, to whom appellant denied knowledge of the gun and denied any knowledge of the killing. The shotgun was introduced at the trial, and showed that the end of the barrel was burst or flared, and there was a bend or indentation in

the barrel about twelve inches from the end. The gun was free from these defects when loaned by Weems to appellant and Smith.

The testimony for the defense tended to show that Smith, Sullivan, and Dewise were traveling aimlessly through the Delta, and on the morning before the killing, the deceased bought a pint of whisky at Itta Bena, and two more pints during the day. Late in the afternoon, Dewise suggested that they go to Philip to see his (deceased's) woman; that they were all drinking throughout the day, and, upon arriving at Nancy's house, proceeded to drink a large quantity of home brew, deceased taking the leading part in the drinking. It was shown in this evidence that the deceased, while at Itta Bena, threatened to kill Sullivan, being heard by Smith but not by Sullivan, and repeated this threat several times while standing in the back yard at Nancy's house. Smith testified that these threats were communicated to Sullivan as they went to find Weems. It was admitted that Smith and appellant went for the shotgun but they gave as their reason that they wanted to be in a position to protect themselves, and also to get the car. Appellant, being asked on cross-examination "Why did you take the gun?" answered, "To reason the thing with him, and, if we had to, to use the gun." Upon reappearing at the car, they found deceased sitting under the steering wheel; that he refused to get out; and that he still had the pistol in his hands. Upon being commanded to get out or move over, deceased opened the car door, stepped out, and seized Smith; that up to that time, Smith held the shotgun, but dropped it, and clinched with deceased, holding deceased's right hand to keep from being shot, and continued to hold fast the gun hand of deceased. That deceased weighed about one hundred eighty pounds, and Smith about one hundred thirty-five or one hundred forty; that deceased threw Smith to the ground where they scuffled, Smith finally calling to appellant, "Pat,

get him off of me!'' In the meantime, appellant had picked up the shotgun, fired one shot, and, after a short lapse of time, fired twice more, his language being, ''I dodged around after the first shot, to try to get a plain shot.'' The defendant's testimony further tended to show that during the whole affray, Smith and deceased were on the ground with deceased on top. After the last shot, Smith arose and discovered that he himself had been shot in the leg, and, according to his testimony, he got immediately into the car, but Sullivan testified that Smith walked to the gate before returning to the car. Appellant also introduced several witnesses from Attala county who testified as to the bad reputation of deceased for peace or violence in his community.

Appellant's defense was that he was justified in killing deceased to protect the life of Smith, or save him from great bodily harm. The main ground relied upon here for reversal is that there should have been a directed verdict for appellant. Appellant ably argues that there was no conflict in the testimony offered to establish justification. In *McGehee* v. *State*, 138 Miss. 822, 838, 104 So. 152, a case similar on the facts, this court held:

''It is true of course that when the circumstances are truthfully developed that the inference drawn from the circumstances must be consistent with guilt and inconsistent with any reasonable theory of innocence. But where the explanation is unreasonable on its face, it is the province of the jury to determine whether the explanation is true or not. If the physical facts contradict the explanation, and if it appears to the satisfaction of the jury that it is untrue, then the mere fact that the defendant testified to such statement does not of itself entitle the defendant to an acquittal.''

The evidence that the nature of the wounds showed all three shots were fired from the back; the wounds in the chest and arm of deceased; the trail of blood from the gate to the dead man's face on the ground where it

puddled; the shots found in the fence and the side of the house; the denials by appellant on the following day; the concealment of the gun and its unexplained damaged condition; and the flight from the scene—are some of the circumstances and physical facts which, we think, were sufficient to place in conflict the testimony of appellant and his witness, Smith, and were sufficient to carry the case to the jury. *Stubblefield* v. *State,* 142 Miss. 787, 107 So. 663; *Grady* v. *State,* 144 Miss. 778, 110 So. 225; *Mc-Fatter* v. *State* (Miss.) 113 So. 187.

Appellant next insists that the court erred in admitting testimony of the witness, Dogan, as to shots being found in the fence and side of the house, which testimony was offered by the state in rebuttal. Contention is made that this was part of the state's testimony in chief. The theory of appellant throughout the trial was that Smith and deceased were scuffling on the ground, and that the deceased was on top of Smith. Any testimony which tended to show that the shooting was not done while deceased was on the ground was rebuttal testimony. We hold that this testimony was properly admitted.

On motion for a new trial, the point was raised that one of the jurors separated from the panel during the recess of court. The bailiff testified that he accompanied one of the jurors to the upper floor of the courthouse, leaving the other jurors in charge of another bailiff, the purpose being to permit the juror to respond to a call of nature; that the courtroom was vacant; and that no one was in the toilet, and, in fact, the juror had no opportunity of talking to, or seeing, any other person during such enforced absence; and that this absence covered a space of about ten minutes.

Under former holdings of this court, this could not be reversible error. *Cunningham* v. *State,* 94 Miss. 228, 48 So. 297; *Johnson* v. *State,* 106 Miss. 94, 63 So. 238.

The action of the lower court in granting instructions for the state numbered in the record, 1, 2, 4, and 5 is

challenged. We think a reading of all the instructions given in the case, both for the state, and for the defendant, and construing them together, discloses that any error or omission in the instructions criticized is entirely cured.

Appellant assigns as error the action of the court in giving the state instruction No. 6, reading as follows:

"The court instructs the jury for the state that you are the sole judges of the credibility of the witnesses in the case, and if you believe that any witness has knowingly or corruptly and falsely testified as to any material fact in this case, you are warranted in disbelieving all the testimony of any such witness, and the court further charges the jury that in passing upon the credibility of the witness you may consider the manner or demeanor of the witnesses while on the stand and the interest the witness may have in the case, if any such interest is shown."

One of the necessary essentials of the doctrine here invoked is knowledge of falsely swearing. If a witness knowingly swears falsely, he necessarily does so corruptly. The one implies the other. In our opinion, the instruction is not subject to the criticism of appellant, and there was no error in granting it. *Brown* v. *State*, 57 Miss. 425; *Morgan* v. *State*, 63 Miss. 162.

The judgment of the court below will therefore be affirmed.

*Affirmed.*