434 So.2d 206 (1983)
W.C. ROBINSON
v.
STATE of Mississippi.
No. 53966.
Supreme Court of Mississippi.
May 18, 1983.
Rehearing Denied July 27, 1983.
Gilmer & Jones, Barry W. Gilmer, Charles I. Knauss, Jr., Jackson, for appellant.
Bill Allain, Atty. Gen. by Marvin L. White, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
WALKER, Presiding Justice, for the Court:
This is an appeal from the Circuit Court of Hinds County wherein W.C. Robinson, appellant, was indicted, tried, and convicted for the January 1, 1981, murder of John Beacham. Upon conviction, Robinson was sentenced to a term of life in the custody of the Mississippi Department of Corrections. Aggrieved of his conviction and sentence, Robinson has appealed to this Court. We affirm.
On December 31, 1980, several people were present at or near the intersection of Jones and Washington Streets in Jackson for the purpose of celebrating the arrival of the new year, which usually included the discharging of firearms and fireworks into the air. Among those present were the appellant, John (Bo Diddley) Beacham (decedent), Flora Lee Alexander, Eula Mae Smith, Lawrence Bonner, Joseph Lee Thomas and John Lee White.
Appellant brought a shotgun with him and three shells from his house between 9:30 p.m. and 10:00 p.m. When he arrived at the gathering on Washington, he placed the gun behind the steps in the rear of one of the houses. An argument subsequently erupted between Flora Lee Alexander and appellant. Beacham, appellant's first cousin, then began to argue with appellant, apparently siding with Flora Lee Alexander, and subsequently accused appellant of telling his (Beacham's) girlfriend about some relationships Beacham had had with other women. Appellant denied he had argued with anyone or that he was irritated with Beacham.
Following the argument, appellant left. When midnight approached, some of the people in the area began firing their guns. Joseph Thames fired his gun when Beacham walked up to his residence at 1725 Washington Street. Thames' gun apparently jammed, so Beacham held the muzzle of the weapon while Thames tried to unjam it. The barrel was pointed upward.
In the meantime, appellant returned to the scene with his shotgun. When he came around the side of one of the houses, John Lee White saw appellant and told him there was not any sense in that. Appellant told White not to say a word and pointed the weapon at him. Appellant then stepped out and yelled, "Bo Diddley, I got a surprise for you." Appellant then discharged his weapon, *207 striking both Thames and Beacham. None of the witnesses for the state saw Beacham point a weapon at appellant or make any threatening move in his direction. Beacham died shortly thereafter, bleeding to death from multiple wounds.
Appellant claimed he was not mad at Beacham nor did he intend to kill Beacham. According to appellant, he walked from between the houses with his gun broken down. Beacham then grabbed Thames' shotgun, pumped it one time and said he (Beacham) was going to kill appellant. In fear for his life, appellant shot Beacham according to his version.
The case was submitted to the jury who returned a verdict of guilty as charged, thereby rejecting appellant's defense of self-defense. He was thereafter sentenced to serve a term of life in the custody of the Mississippi Department of Corrections.
Did the trial court err in granting instruction S-3? The state requested and obtained the following instruction:
The Court instructs the Jury that to make a killing justifiable on the grounds of self-defense, the danger to the defendant must be either actual, present and urgent, or the Defendant must have reasonable grounds to apprehend a design on the part of the victim to do him some great bodily harm, and in addition to this, that there must be imminent danger of such design being accomplished; and hence, mere fear, apprehension or belief, however sincerely entertained by one person, that another designs to take his life or to do him some bodily harm, will not justify the former in killing the latter. A party may have apprehension that his life is in danger, and believe the grounds of his apprehension just and reasonable, and yet he acts at his peril. He is not the final judge; the Jury may determine the reasonableness of the ground upon which he acted.
Appellant contends this instruction is a misstatement of the law.
As stated in Coleman v. State, 22 So.2d 410 (Miss. 1945), "This instruction has been approved in the criminal jurisprudence of this State ever since Wesley v. State, 37 Miss. 327 ..." (1859).
In Shields v. State, 244 Miss. 543, 144 So.2d 786 (1962), this Court observed that "The ... instruction complained of by appellant has been used as a model by the prosecuting attorneys of this State for many years."
The instruction was criticized in Bailey v. State, 174 Miss. 453, 165 So. 122 (1936), but was held not to be reversible error.
Since the decision in Bailey, this instruction has been approved as late as 1977 in Bright v. State, 349 So.2d 503 (Miss. 1977).
Although a majority of the Court is of the opinion that the instruction does correctly state the law, several other Judges are of the opinion that it is too long, redundant and confusing.
In the future, it might be wise for district attorneys to substitute the following instruction for the one quoted above:
The court instructs the jury that to make a killing justifiable on the grounds of self-defense, the danger to the defendant must be either actual, present and urgent, or the defendant must have reasonable grounds to apprehend a design on the part of the victim to kill him or to do him some great bodily harm, and in addition to this he must have reasonable grounds to apprehend that there is imminent danger of such design being accomplished. It is for the jury to determine the reasonableness of the ground upon which the defendant acts.
Being of the opinion that the remaining assignments of error are without merit, the judgment and sentence of the Circuit Court are affirmed.
AFFIRMED.
PATTERSON, C.J., BROOM, P.J., and ROY NOBLE LEE, PRATHER and ROBERTSON, JJ., concur.
PATTERSON, C.J., and HAWKINS and DAN M. LEE, JJ., specially concur.
BOWLING, J., dissents.
*208 HAWKINS, Justice, specially concurring:
I concur in the result reached in this case, and that Instruction S-3 quoted in the majority opinion is redundant and unnecessarily emphasizes the principles of law it enunciates.
Diffidently, I suggest the instruction the majority now suggests to the circuit judges is also subject to the same criticism, although to a much lesser degree.
I believe the following instruction adequately states the principles in language a jury would have no difficulty understanding:
The court instructs the jury that to make a killing justifiable on the grounds of self-defense, the defendant must either actually be in present danger of death or serious bodily harm at the hands of the victim, or must have reasonable grounds to presently fear death or serious bodily harm at the hands of the victim, and mere belief of death or serious bodily harm at the hands of the victim, however sincerely entertained, is insufficient.
It will be for the jury to determine whether the defendant was in actual present danger for his life, or had reasonable grounds to fear death or serious bodily harm at the hands of the victim.
DAN M. LEE, Justice, specially concurring:
I specially concur in the majority's opinion today to emphasize to the bench and bar the importance of jury instructions in our judicial system and to further stress the significance that such instructions be properly framed so as not to confuse the jury.
The facts are well stated in the majority opinion and will not be reiterated here.
Appellant has assigned four errors for reversal of his conviction for the murder of John Beacham. His first assignment of error concerns the admission into evidence of two color slides depicting the victim's fatal wounds.
Appellant contends the gruesome nature of the pictures having no probative value as to his guilt or innocence, was reversible error. Appellant avers there was no issue raised as to the cause of death, the fact of death, the weapon causing death or the fact that he shot the decedent; therefore, the pictures were introduced solely to inflame the jury and prejudice the appellant.
In this state the trial judge is granted much discretion to determine the admissibility of photographs. Briggins v. State, 416 So.2d 691 (Miss. 1982); Edwards v. State, 413 So.2d 1007 (Miss. 1982); King v. State, 408 So.2d 1375 (Miss. 1982); Sadler v. State, 407 So.2d 95 (Miss. 1981); Tubbs v. State, 402 So.2d 830 (Miss. 1981); Steed v. State, 396 So.2d 625 (Miss. 1981); and Cooley v. State, 391 So.2d 614 (Miss. 1980). The admission of photographs alone which have no probative value does not generally constitute reversible error. Stevenson v. State, 325 So.2d 113 (Miss. 1975).
Appellant next complains of the calling of the state's witness John Lee White as a rebuttal witness because White, an eyewitness to the offense, should have been produced as a witness in chief. Apparently the state did not learn of White's presence at the scene of the crime until the state's second witness was cross-examined by appellant's counsel. White was not subpoenaed as a witness until approximately 11:00 a.m. on the day of the trial. White, in his testimony, contradicted appellant's version of the shooting in regard to his plea of self-defense.
Appellant contends it was error to allow White to testify in rebuttal because White, a witness to the shooting, should have been called as a witness in the state's case in chief.[1] Appellant further asserts that an unfair burden was placed on appellant by allowing White to testify in rebuttal.
A trial judge has wide discretion in admitting rebuttal evidence. Carroll v. State, 396 So.2d 1033 (Miss. 1981). Appellant relies upon Russell v. State, 185 Miss. 464, 189 So. *209 90 (1939); Roney v. State, 167 Miss. 827, 150 So. 774 (1933), and Flowers v. State, 85 Miss. 591, 37 So. 814 (1904). An examination of those cases, however, clearly reveals that permitting direct testimony in rebuttal is bad practice but not reversible error, standing alone.
The state relies on Thomas v. State, 377 So.2d 593 (Miss. 1979), however Thomas is distinguishable readily because there no objection was made to the witness who testified in rebuttal.
In Sullivan v. State, 149 Miss. 412, 115 So. 552 (1928), this Court stated:
Appellant next insists that the court erred in admitting testimony of the witness, Dogan, as to shots being found in the fence and side of the house, which testimony was offered by the state in rebuttal. Contention is made that this was part of the state's testimony in chief. The theory of appellant throughout the trial was that Smith and deceased were scuffling on the ground, and that the deceased was on top of Smith. Any testimony which tended to show that the shooting was not done while deceased was on the ground was rebuttal testimony. We hold that this testimony was properly admitted.
(149 Miss. at 423, 115 So. at 554)
Here appellant relied upon the defense of self-defense. The testimony of White tended to show that appellant was not under a reasonable apprehension of fear for his life at the time he fired the fatal shot. Pursuant to Sullivan, the testimony of White was properly admitted rebuttal evidence.
Appellant in his third assignment of error asserts that the verdict of the jury was against the overwhelming weight of the evidence. The evidence presented by both sides was in hopeless conflict. The resolution of such conflicts were for determination by the jury. Sadler v. State, supra. It is not our province to invade the jury's prerogative.
Appellant's fourth assignment of error concerns the granting of Instruction S-3 on self-defense.
The defense of self-defense embodies the right to act upon reasonable appearance of imminent danger of great bodily harm or loss of life. Shinall v. State, 199 So.2d 251 (Miss. 1967); Bond v. State, 249 Miss. 352, 162 So.2d 510 (1964); Ross v. State, 234 Miss. 309, 106 So.2d 56 (1958); Ward v. State, 203 Miss. 876, 34 So.2d 720 (1948); and Scott v. State, 203 Miss. 349, 34 So.2d 718 (1948). This reasonable appearance of imminent danger is adjudged from a criminal defendant's standpoint and if he has cause to believe, and does believe, he is in imminent and immediate danger of being killed, he is entitled to acquittal even though there was no danger in fact. Jackson v. State, 79 Miss. 42, 30 So. 39 (1901); and Bang v. State, 60 Miss. 571 (1882). Actual danger is not essential to the right of self-defense. Godwin v. State, 73 Miss. 873, 19 So. 712 (1896). In Ingram v. State, 62 Miss. 142 (1884), this Court stated:
The sixth instruction for the State told the jury that the defendant must have been in actual danger at the time of the killing to justify him in shooting for his own defense. It is true that another and distinct clause of the instruction qualifies the foregoing by embracing the proposition of the sufficiency of apparent danger at the time to justify action in defense, but it is by no means clear that the instruction as a whole was properly understood, and that it did not do harm.
The conflicting evidence as to the circumstances of the killing made it especially important that no error should be committed in instructing the jury.
It is matter of much regret that we feel compelled so often to reverse the judgments in criminal cases, because of serious errors which could easily be avoided. When we see that the jury has been misdirected, and may have been misled thereby, our duty is to grant a new trial. If fewer instructions were given and greater care was observed in framing them, it would be most favorable to the interest of the State in the administration of the criminal laws. In many cases it would be wise to give no instructions at all for the State, and in none is it prudent *210 to give many. By this course convictions would be just as numerous and reversals would be rare.
(62 Miss. at 144-45)
While the granting of a similar instruction was upheld in Bright v. State, 349 So.2d 503 (Miss. 1977), the instruction has not been without criticism. See Bailey v. State, 174 Miss. 453, 165 So. 122 (1936).
The instruction begins with a proper statement of law being:
The Court instructs the Jury that to make a killing justifiable on the grounds of self-defense, the danger to the defendant must be either actual, present and urgent, or the Defendant must have reasonable grounds to apprehend a design on the part of the victim to do him some great bodily harm.
The objectionable portions of the instruction are as follows:
(1) ... and hence, mere fear, apprehension or belief,

(2) However sincerely entertained by one person, that another designs to take his life or to do him some bodily harm, will not justify the former in killing the latter.
(3) A party may have apprehension that his life is in danger, and believe the grounds of his apprehension just and reasonable, and yet he acts at his peril.

The instruction is fraught with redundancy. It begins by granting a criminal defendant the right to lawfully defend himself against an unlawful act but then qualifies that right by three specific grounds which substantially erodes if not totally obliterates the concept of self-defense. Under this instruction a criminal defendant acts at his peril regardless of the apparent danger or his reasonable grounds to believe that the danger is real and apparent or however sincerely he may entertain such beliefs. By instructing the jury that he acts at his peril even though all other elements of the instructions are present, the jury is in effect peremptorily instructed in direct conflict of the defendant's right to defend an unlawful act when all other condition precedents are met.
It is for the jury to determine the reasonableness of the defendant's acts in a given situation in light of the circumstances then and there present. If they find that a real or apparent danger existed and that the defendant sincerely believed there was a danger on the part of the victim to kill him or do him some great bodily harm and he also had a reasonable ground to apprehend that there was imminent danger of such a design being accomplished, the jury must then determine the reasonableness of the ground upon which the defendant acts. If the jury finds that all of these exigencies were present and that the defendant was reasonable in his actions the jury should find the defendant not guilty. However, if the jury finds that any one of the elements of self-defense are lacking they may then justifiably reject his defense.
When the jury hears and reads written instructions from the court on one set of facts and applicable legal principles involved which are in direct conflict, it only serves to agitate and confuse a jury rather than assist it in applying the law to the facts to arrive at a just verdict. By confusing the jury the defendant is deprived of a fair trial to which he is justly entitled.
As the majority opinion points out the instruction under attack has been used as a model by the prosecuting attorneys of this state for many years. Because this instruction has been relied upon by the bench and bar for many years, I agree that its granting was not error in this case. To hold otherwise could produce substantial inequitable results and disrupt numerous holdings of this Court. Under the doctrine of stare decisis we ordinarily adhere to our former decisions however where those decisions have become impractical in our ever changing world or otherwise unjust then we can not blindly follow those precedents. Perhaps it was best stated in our holding in Brewer v. Browning, 115 Miss. 358, 76 So. 267 (1917) wherein Justice Ethridge so aptly stated,
See, also, Ellison v. Georgia Elec. [Railroad] Co., 87 Ga. 691, 13 S.E. 809 (where *211 BLECKLEY, C.J., says: "The only treatment for a great and glaring error affecting the current administration of justice in all courts of original jurisdiction is to correct it. When an error of this magnitude, and which moves in so wide an orbit, competes with truth in the struggle for existence, the maxim for a supreme court, supreme in the majesty of duty as well as in the majesty of power, is not `Stare decisis,' but `Fiat justitia ruat coelum' [Let right be done, though the heavens should fall]"); Messinger v. Anderson, 225 U.S. 436, 32 Sup.Ct. [739] 740, 56 L.Ed. 1152 ...
... .
We think courts are created and maintained and sworn to administer justice, and not to adhere strictly to arbitrary rules. When a rule of decision defeats justice or seriously impairs it, it should be departed from rather than followed. Rules are made to secure justice, not defeat it.
(115 Miss. at 364-366, 76 So. at 270)
See also Stone v. Reichman-Crosby Co., Miss., 43 So.2d 184 (1949).
In my opinion use of the instruction under attack in the case sub judice should be refrained from in the future. Where applicable, the instruction proffered in the majority opinion which correctly states the law on self-defense, should be used and there should be no attempts made to either enlarge upon or detract from its principles.
PATTERSON, C.J., joins in this opinion.
BOWLING, Justice, dissenting:
I dissent from the majority and specially concurring opinions in this case and would reverse the case because the jury was given State's Instruction 3, as that instruction is set out in the three controlling opinions.
I make the above statement fully knowing that remarks, unheard by me, will be made to the effect that the writer is now "soft on crime," a "liberal," "refuses to follow the law," and his attitude, as reflected by the following opinion, puts him on the side of the defendant.
I readily accept such criticism, believing that what I now say is what should be said in this case regarding the instruction that is the sole issue in the case. I make no comment, nor have any opinion, as to the guilt or innocence of the appellant. As has been said hundreds of times [many times by this writer], the question of guilt or innocence is for the jury under proper instructions. An accused is not entitled to a perfect trial, but entitled to a fair trial under proper court procedures.
Each of the three controlling opinions admits that Instruction S-3 is improper and each suggests a substitute with the recommendation that prosecutors use such in the future.
In the first place, I do not know which of the three suggested substitutes should be used. Should it be that suggested by Presiding Justice Walker, or that suggested by Justice Dan Lee, or that suggested by Justice Hawkins, or should we recommend that all three be given?
I do know that on January 13, 1936, this Court handed down an opinion in the case of Bailey v. State, 174 Miss. 453, 165 So. 122 (1936), in which practically the identical instruction was discussed. The Court there, through Presiding Justice Ethridge, took the same line of reasoning as the three controlling opinions do in the present case. The instruction was criticized even to the extent that it was said, "if standing alone [it] might mislead... ." Bailey, supra went on to say that:
Other instructions also carried the idea to the jury that they could rely upon the appearance of great bodily harm, and that the appellant could defend himself against any attack reasonably apparent.
The Bailey opinion concluded by saying:
Taking all the instructions as an entirety, the jury was clearly informed of the rights of the appellant to repel an assault. We cannot believe that the jury was misled in respect to the rights of the appellant under the law upon this proposition; but we deem it proper to warn the district or prosecuting attorneys against the effect of these principles, especially *212 where there are facts in evidence which, if believed, would make the giving of certain instructions inapplicable. (Emphasis added).
If the prosecuting personnel was warned and requested not to seek and secure the criticized instruction forty-seven years ago, and that warning was ignored, how in the name of common sense can we expect the warning set out in the three controlling opinions to be successful? As a practical proposition this writer, with many years of experience as an attorney and jurist, knows that many prosecuting personnel will not even read these opinions. We make this criticism with hat in hand and beg their forgiveness, but we cannot get around the facts of life. I hasten to say that courts before this one with its present personnel have let the criticized instruction "slide by" rather than call a spade a spade.
In my humble opinion Instruction S-3 is a peremptory instruction of guilt to the jury. It states that: "... and hence, mere fear, apprehension or belief, however sincerely entertained by one person, that another designs to take his life or to do him some bodily harm will not justify the former in killing the latter. A party may have apprehension that his life is in danger and believe that the grounds of his apprehension are just and reasonable, and yet he acts at his peril. ..."
Any member of the bar with practical experience knows that the prosecution has the final word to the jury, and any practically minded person knows that the text taken in this final argument is "he acts at his peril." I cannot think of a more strong statement to be impressed on the minds of the jurors immediately prior to entering the jury room.
The reason for the warning in Bailey, supra, and the affirmance of the case was that there were several other instructions to justify "sliding over" the defendant being required to act "at his peril." An examination of the instructions in the case sub judice does not reveal such offsetting, clarifying and error-reducing instructions, even though two or three others were secured by the state and the defendant.
I do not believe that the instruction about which we are concerned gave the defendant a fair trial, even recognizing, as hereinbefore stated, that he was not entitled to a perfect trial. I would stand up and hold specifically and without any reservation that the instruction in question was prejudicial to a person being tried for his liberty and contending that his actions were taken in self-defense. I would reverse the cause for a new trial.
NOTES
[1] Appellant asserts the reason that the state did not call White as a witness in chief was due to its failure to furnish appellant his name pursuant to Rule 4.06 of the Uniform Criminal Rules of Circuit Court Practice.