# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-KA-00095-SCT

*ROBERT LEON ELLIS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/28/93 |
| TRIAL JUDGE: | HON. JAMES E. THOMAS |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DONALD J. RAFFERTY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | CONO CARANNA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 4/9/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/30/98 |

**BEFORE PRATHER, C.J., SMITH AND WALLER, JJ.**

**PRATHER, CHIEF JUSTICE, FOR THE COURT:**

### STATEMENT OF THE FACTS AND CASE

¶1. On the afternoon of June 27, 1992, a fight occurred between Rico Ellis, Roy Lee Banks, Michael Banks, and Jessie Banks. Robert Leon Ellis ("Ellis"), the brother of Rico Ellis, was thrown to the ground by Roy Lee Banks and stabbed by Jessie Banks while trying to break up the fight. While Ellis was at the hospital being treated for his stab wounds, Roy Lee Banks ("Banks") and others drove by Ellis' home and fired shots into the house. Ellis was released from the hospital that same day.

¶2. Upon returning home, Ellis went to purchase a soft drink at Yeager's Food Store. On arriving at the store, Ellis testified that he saw Banks at the store and that Banks pulled out a chrome pistol. Ellis testified that he was frightened and that he pulled out his own pistol, at which time Banks ran to the side of the building and disappeared. Ellis next drove to the corner and crossed a highway, at which point, he testified, Banks came running across the highway towards him.

¶3. Ronald Holloman, an eyewitness to the shooting, testified to driving on Highway 49 when he heard a popping noise. Upon looking around, Holloman saw a blue Oldsmobile chasing after a man

running on foot. Holloman testified that the driver of the car was shooting at the man running on foot and that the car stopped as the fleeing man reached a ditch. Finally, Holloman testified that the driver got out and fired several shots at the victim. Roy Lee Banks was fatally wounded as a result of these gunshots. Although Ellis claimed the killing was in self-defense, he was convicted of the murder of Banks on May 28, 1993 and sentenced to life imprisonment. Ellis timely appealed to this Court.

### I. The court committed reversible error when it granted the State's jury instruction on self defense which did not instruct the jury properly on the defendant's right to reasonable grounds of apprehension and did not conform with this Court's prior rulings.

¶4. Ellis argues that the granting of the State's jury instruction S-6 was reversible error in that this instruction did not accurately instruct the jury regarding this State's law of self-defense. The State's jury instruction S-6 instructed the jury as follows:

> (T)here must be something shown in the conduct of the deceased indicating a present intention to kill or do some great personal injury to the slayer and imminent danger of such intention being accomplished; mere fears or beliefs are insufficient. The danger must be such as to lead a person reasonably to believe that the killing was necessary to prevent the deceased from killing him or doing to him some great bodily harm.

This instruction is phrased differently than the self-defense instruction approved by this Court in *Robinson v. State*, 434 So.2d 206, 207 (Miss. 1983):

> The Court instructs the jury that to make a killing justifiable on the grounds of self-defense, the danger to the defendant must be either actual, present and urgent, or the defendant must have reasonable grounds to apprehend a design on the part of the victim to kill him or to do him some great bodily harm, and in addition to this he must have reasonable grounds to apprehend that there is imminent danger of such design being accomplished. It is for the jury to determine the reasonableness of the ground upon which the defendant acts.

¶5. In the view of this Court, there are at least two areas in which this Court's model instruction set forth in *Robinson* is preferable to the instruction submitted to the jury in the present case. First, it could be argued that S-6 focuses excessively on the conduct of the deceased at the time of the shooting, stating that "(t)here must be something shown in the conduct of the deceased indicating a present intention to kill or do some great personal injury to the slayer." S-6 does not contain the broader language in the *Robinson* instruction regarding the slayer's "reasonable grounds to apprehend a design on the part of the victim to kill him or do him some great bodily harm." This State's law regarding self-defense examines whether a defendant had reasonable grounds to fear great personal injury under all the circumstances, and the *Robinson* instruction instructs the jury more clearly in this regard.

¶6. In the present case, the events which may have given rise to a reasonable fear on the part of Ellis that he was in danger of serious bodily injury from Banks occurred largely in the hours prior to the fatal shooting. The record indicates that Banks had attacked Ellis earlier in the day, forcing him to seek medical care at a hospital. The record further indicates that Banks had fired gunshots into Ellis' home later that same day, and Ellis testified that Banks had threatened to kill him. The language of S-6 could thus have been better phrased to make it clear to the jury that its inquiry was not limited to a

consideration of Banks' actions at the time the shooting occurred.

¶7. This Court nevertheless concludes, however, that S-6 is not fatally defective in this regard, given that the instruction does refer generally to "conduct of the deceased" rather than specifically limiting the jury's consideration to Banks' conduct at the time of the shooting. The general term "conduct of the deceased" includes Banks' conduct earlier in the day, including the fight and drive-by shooting in which Banks is alleged to have participated. Counsel for Ellis argued extensively with regard to Banks' threatening behavior on summation, and Ellis was allowed to present his evidence in this regard. This Court concludes that S-6 did not deny Banks the right to have his defense of self-defense properly considered by the jury in the present case and that this point of error is without merit.

¶8. In addition, the State notes that the only objection to S-6 made by counsel for Ellis pertained to the statement in S-6 that "mere fears and beliefs are insufficient." Counsel for Ellis expressed his view to the trial judge that fears and beliefs were in fact sufficient, but his objections were overruled:

> The Court: Do you have any problems with 6 ? If you do what is it specifically?
>
> Mr. Woods: Other than the fact that I don't believe this is the law, Judge. I think that fears and beliefs are sufficient. And I think that the footnote for self-defense, 97-3-15, states that the reasonable grounds to apprehend is allowed in that, and that's out of *Matthews v. State*.
>
> The Court: Well, I think S-6 is an appropriate and standard instruction. I'm going to grant it.

In the view of this Court, S-6 could have been phrased better in this regard, given that, considered alone, the statement that "fears and beliefs are insufficient" does not accurately and completely instruct the jury regarding Mississippi law. The fact remains, however, that the next sentence in S-6 instructed the jury that "(t)he danger must be such as to lead a person reasonably to believe that the killing was necessary to prevent the deceased from killing him or doing to him some great bodily harm." Read together, these two sentences inform the jury that mere fears and beliefs of great bodily harm on the part of a defendant are insufficient, but that these fears and beliefs must be reasonable. This is an accurate statement of Mississippi law. A defendant is not entitled to use deadly force in self-defense based upon a subjective fear of great bodily injury unless it is determined by a jury that this fear is reasonable under the circumstances.

¶9. S-6 is less well-written than this Court's model instruction in *Robinson*, but this Court concludes that, read as a whole, the instruction did not misstate the law of self-defense of this State. This Court recommends once again, however, that the *Robinson* instruction be utilized by the trial courts of this State in appropriate cases. This point of error is overruled.

### II. The appellant was denied effective assistance of counsel when his trial attorney did not submit jury instructions to support the defendant's theory of defense testified to at trial.

¶10. Ellis alleges ineffective assistance of counsel in that his trial [1]counsel failed to submit the standard *Robinson* self-defense instruction, instead attempting to submit a "stand your ground instruction." This instruction was denied by the trial judge. Ellis argues that:

> If the jury were properly instructed as to looking at whether a reasonable person in the Defendant's position would have reasonable grounds to apprehend a design on the part of the

victim to kill him or to do him some great bodily harm, and in addition to this have reasonable grounds to apprehend that there is imminent danger of such design being accomplished, then with the testimony provided there is a probability sufficient to undermine confidence in the outcome.

In *Strickland v. Washington*, 466 U.S. 668 (1984) the United States Supreme Court established a two part test which must be met in order for an appellant to prevail on an ineffective assistance of counsel argument. This Court adopted *Strickland* in *Stringer v. State*, 454 So.2d 468, 476 (Miss. 1984). To prevail on his ineffective assistance of counsel, argument, Ellis must demonstrate that:

(1) his counsel's performance was deficient and

(2) this deficient performance prejudiced his defense.

Ellis must demonstrate that there is a reasonable probability that, but for the errors of his counsel, the verdict of the jury would have been different. *Nicolaou v. State*, 612 So.2d 1080, 1086 (Miss. 1992).

¶11. In the view of this Court, Ellis' claim of ineffective assistance of counsel is without merit, given that there is no reasonable probability that a jury would have failed to convict him even if the *Robinson* instruction had been granted. There is no reasonable probability that a jury would conclude that, at the time of the shooting, there was any imminent danger of Banks carrying out his alleged design to kill or seriously injure Ellis, assuming that he had such a design. The evidence at trial indicated that Banks was running for his life while being chased down and fired upon by Ellis from his car over a distance of four city blocks. Ellis himself testified that, while he had seen a gun in Banks' possession outside the store, he did not see any weapon while Banks was running from his car on foot. The record further indicates that Ellis chased Banks up to a ditch, and that he then fired several shots, fatally wounding Banks.

¶12. Ronald Holloman, a life-long resident of the Gulf Coast, testified to witnessing the shooting once Ellis' vehicle reached the intersection of Tennessee and Jackson:

Q: All right. Go ahead, sir. Tell me what happened when he got to this point at Tennessee and Jackson.

A: Okay. The person in the car stopped the vehicle, run to the end of the vehicle and held his hand out and started shooting.

Q: Which end of the vehicle, Mr. Holloman ?

A: This end right here.

Q: The trunk ?

A: The trunk.

Q: All right, sir. He just stood there and he shot five or six times. You just made another hand gesture when you talked that he started shooting. Describe how he held the gun and what you observed about the person who was firing off the shots ?

A: He just held it straight out in front of him. I seen the whole thing. He just followed him.

Q: What did he do after he fired the shots as you watched ?

A: Well, the person he was shooting at, he came up on a ditch, I remember that real well, a big ditch right there, and he slowed down. And as he slowed down he looked to his left and that's when he got shot. ....

Q: Mr. Holloman, from the time you first observed the individual on foot south on Tennessee Street until the time he fell, until the time you saw him shoot, did he at any time exhibit any kind of weapon, knife, gun, stick, pipe, anything ?

A: Not that I seen.

¶13. Gwen Thomas, a Gulfport resident, testified to witnessing the shooting while riding as a passenger in a car driven by her niece:

Q: Mrs. Thomas, very carefully, did the gentleman who was running, from the time you first noticed him, south down Tennessee to where he turned off in the field, to where he fell, did you ever see a weapon ?

A: No.

Q: Did he ever exhibit any kind of gun, knife, stick, anything in his hands at all ?

A: No.

Q: And you had a clear vision or shot of them both ?

A: Yes.

Q: Do you wear corrective lenses or anything like that ?

A: No.

None of the witnesses, including Ellis himself, testified to seeing a gun in Banks' possession at the time he was killed, and none was found by police afterwards. Even assuming that Ellis did in fact see Banks flash a gun a few minutes earlier, Ellis had clearly made himself the aggressor by continuing to chase down a victim running for his life.

¶14. Under the facts of the present case, there is no reasonable probability that a jury would have concluded that Ellis was in imminent danger of being killed by the fleeing Banks at the time he fired the shots which resulted in Banks' death. This is true even if a jury concluded that Ellis had reasonable grounds to apprehend a design on the part of Banks to do him great bodily harm based upon events which occurred earlier in the day. There is thus no reasonable probability that a jury would have reached a different verdict even if the defense counsel had submitted the ***Robinson*** instruction. As noted in the first point of error, the self-defense instruction (S-6) submitted to the jury in the present case did not misstate this State's self-defense law, and this point of error is without merit. The conviction is affirmed.

**¶15. CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**SULLIVAN AND PITTMAN, P.JJ., McRAE, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR. BANKS, J., CONCURS IN RESULT ONLY.**

1. The appellate counsel for Ellis is different from his counsel at trial.